UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LORRAINE PADRO, DHANASAR RAMAN,
TOBY MARLOW, as court-appointed guardian for
JUDITH BLUMENSOHN, CARMEN DURAN,
JOHN EDWARDS, ERNESTA GUTIERREZ,
JULIA JUAN, and JANE DOE, individually and on
behalf of all others similarly situated,

                       Plaintiffs,

    v.

MICHAEL J. ASTRUE,
AS COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CLASS ACTION COMPLAINT**

__-CV-____ (___)

## PRELIMINARY STATEMENT

1.     Plaintiffs, on behalf of themselves and all others similarly situated (together "Class Plaintiffs"), bring this action against the Commissioner of the Social Security Administration Michael J. Astrue ("the Commissioner"), for bias against Social Security disability claimants by the Queens Office of Disability Adjudication and Review ("QODAR"), resulting in a systematic failure to provide full and fair Social Security benefit hearings.

2.     Class Plaintiffs comprise a vulnerable group of disabled individuals with extremely limited means of subsistence. Many have profound disabilities—the kind of disabilities, as one court put it, that "dominate life." Notwithstanding clearly documented and disabling medical conditions, Class Plaintiffs, and thousands like them, have diligently pressed their rights for years—cataloging their conditions, meeting with doctors, being subjected to innumerable tests and procedures—only to run headlong into the QODAR brick wall of bias.

3.      Prior court judgments have found routine derelictions of duty, and commission of the same legal errors, in case after case after case.  Courts have used various phrases to describe the problem, highlighted more fully below, with Administrative Law Judges ("ALJs") from QODAR, including:

    a.      Proceedings that were "**a far cry**" from the required standards;

    b.      Rationale that was "**plucked from thin air**";

    c.      Conduct that "**trivializes plaintiff's impairments**" and "**raises the possibility that the ALJ was not seeking to neutrally develop the record, but rather to find support for the conclusions he had already formed**";

    d.      Analysis that was "**deficient**" and "**incoherent**";

    e.      Decisions that were "**at odds with established precedent**," "**replete with conclusory statements**," "**arbitrary**," "**illogical**," and "**not supported by substantial evidence**";

    f.      Delay that was "**particularly egregious**";

    g.      Witness examinations that were "**a study in combative questioning**"; and

    h.      Overall conduct that demonstrates "**serious negligence and could possibly even suggest bias.**"

4.      Many similar criticisms can be found on hundreds of pages of judicial ink devoted to reviewing and remanding the decisions of the ALJs discussed below.  Again and again and again, claimants, their advocates, and, finally, judges, must wade through thousands

of pages of testimony and records only to find the same errors—a monumental waste of judicial and legal time and resources.

5.      In each case, the victim of the error was not the Commissioner—it was the claimant.  Viewed in proper context, these errors are routine, clearly intentional, and an obvious manifestation of general bias against claimants.

6.      Indeed, QODAR has the *third highest benefits-denial rate in the entire country*, the highest benefits-denial rate in the New York region, and *almost all of the ALJs below rank high on the national list of top claims deniers*.  On appeal, the QODAR suffers one of the highest remand rates in the country.

7.      These statistics are all the more deplorable in light of the Second Circuit's pronouncement in *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975), that the Social Security Act (the "Act") must be liberally applied.  The Act's intent is inclusion, not exclusion, except in QODAR.

8.      In particular, five members of QODAR have demonstrated persistent and flagrant bias against benefits claimants as demonstrated conclusively by their persistent and intentional legal and procedural errors, as well as unprofessional behavior and disregard of court-imposed rules.

9.      Accordingly, Class Plaintiffs seek a declaratory judgment that the ALJs in question—Michael D. "Manuel" Cofresi, Seymour Fier, Marilyn P. Hoppenfeld, David Z. Nisnewitz, and Hazel C. Strauss, (together, the "Named ALJs"):

   a.      Routinely fail to develop administrative records in dereliction of their duties;

b.     Routinely refuse to apply correct legal standards even when instructed by federal court to do so;

c.     Routinely make erroneous credibility determinations against claimants, including by failing to consider claimants' work histories;

d.     Routinely engage in unprofessional and unfair behavior to the detriment of claimants; and

e.     Taken together, these consistent actions deprive Class Plaintiffs and other claimants of their rights to fair hearings before an impartial adjudicator, in violation of the Social Security Act, the Administrative Procedure Act, and the due process guarantee of the Fifth Amendment to the United States Constitution.

10.     Plaintiffs also seek an injunction barring the Commissioner from allowing the Named ALJs to preside over any claims for Social Security disability benefits ("SSD") under Title II of the Act, 42 U.S.C. §§ 401 *et seq.*, and Supplemental Security Income benefits ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.*

## JURISDICTION

11.     This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c), and 28 U.S.C. §§ 1331 and 1361.  Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, and injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

12.     Venue lies within this district pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## PARTIES

13.     Plaintiff Lorraine Padro is a resident of Ozone Park, New York, and a claimant for SSI.  Ms. Padro's case is assigned to the Honorable Nicholas G. Garaufis, District Judge, U.S. District Court for the Eastern District of New York 10-CV-3387.

14.     Plaintiff Toby Marlow is a party to this lawsuit as the court-appointed guardian for Judith Blumensohn.  Both Ms. Marlow and Ms. Blumensohn are residents of Queens, New York, and Ms. Blumensohn is a claimant for SSD.  Ms. Blumensohn's case is assigned to the Honorable Sandra L. Townes, District Judge, U.S. District Court for the Eastern District of New York, 11-CV-00860.

15.     Plaintiff John Edwards is a resident of Brooklyn, New York, and a claimant for SSI.  Mr. Edwards' case is assigned to the Honorable Kiyo A. Matsumoto, District Judge, U.S. District Court for the Eastern District of New York, 11-CV-00971.

16.     Plaintiff Jane Doe is a resident of Far Rockaway, New York, and a claimant for SSI.  Jane Doe's case is pending before the Appeals Council.

17.     Plaintiff Carmen Duran is a resident of Richmond Hill, New York, and a claimant for SSI.  Ms. Duran's case is pending before the Appeals Council.

18.     Plaintiff Ernesta Gutierrez is a resident of Sunnyside, New York, and a claimant for SSI.  Ms. Gutierrez is preparing to file her case in the U.S. District Court for the Eastern District of New York.

19.     Plaintiff Julia Juan is a resident of Elmhurst, New York, and a claimant for SSD and SSI.  Ms. Juan's case is pending before the Appeals Council.

20.     Plaintiff Dhanasar Raman is a resident of South Ozone Park, New York, and a claimant for SSD and SSI.  Mr. Raman's case is pending before the Appeals Council.

21.     Defendant Michael J. Astrue is the Commissioner of the Social Security Administration ("SSA") and is statutorily responsible for the administration of the Act.  SSA employs a corps of ALJs to adjudicate claims under the Act by claimants who request hearings. The SSA established the Office of the Chief Administrative Law Judge which oversees the hearing process conducted by SSA's ALJs; formulates and develops broad policies and objectives and establishes program goals for the ALJs; engages in continuous examination of all aspects of the Office of Disability Adjudication and Review ("ODAR") operations and implements improvements where needed; is responsible for developing and maintaining procedures for effective operations of the hearings; provides management oversight for all managerial activities in ODAR field offices; and coordinates regional and hearing office activities.

## CLASS ACTION ALLEGATIONS

22.     The named plaintiffs bring their claims on behalf of themselves and other similarly situated persons, pursuant to Federal Rules of Civil Procedure ("FRCP") 23(a) and (b)(2).

23.     The class consists of all claimants whose claims will be assigned to the Named ALJs for a hearing and/or decision and all SSI and SSD claimants who, since January 1, 2005, have received an unfavorable or partially favorable decision, not reversed on any subsequent appeal, from the Named ALJs.

24.     The class action requirements of FRCP 23(a) and (b)(2) are met in that:

      a.     The class is so numerous that joinder of all members is impracticable. Upon information and belief, the Named ALJs each conduct over 150 hearings a year and deny benefits to up to 80% of claimants who appear

before them.  Every individual eligible for a hearing before the Named

ALJs is a potential class member.

b.      There are questions of law and fact common to the class, including

whether the Named ALJs are generally biased against claimants for SSI

and SSD and whether this bias deprives Class Plaintiffs of their right to a

full and fair hearing before an impartial adjudicator, in violation of the

Act, the Administrative Procedure Act, and the Due Process Clause of the

Fifth Amendment.

c.      The named plaintiffs' claims are typical of the claims of the class, and the

named plaintiffs have no conflict of interest with other members of the

class, all of whom would benefit from the relief sought in this case.

d.      The named plaintiffs will fairly and adequately represent the interests of

the class.  Plaintiffs are represented by counsel experienced in class

action litigation, and in litigating cases involving the SSA as well as other

public benefit programs.  Counsel has previously litigated numerous class

action suits in federal court and has sufficient resources to prosecute the

present case.

e.      The Commissioner has acted on grounds generally applicable to the class

by allowing plaintiffs' claims to be assigned to the Named ALJs despite

their bias and inability or unwillingness to provide fair hearings.  If class

certification is not granted, individuals would be forced to bring separate

actions, thereby wasting judicial resources, as well as the time of

attorneys from government agencies and free legal services programs.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

**A.**   **Applying for Social Security Benefits**

25.     The Commissioner administers several types of benefits under the Act, including benefits based on disability or old age.  A disabled person can apply for two distinct forms of disability benefits administered by SSA:  SSD, which is based on work history, and SSI, which is based on limited income and resources.  Some individuals are eligible for both SSI and SSD.

26.     A disabled individual may be eligible for SSD based on his or her work history, or the work history of a parent or spouse.  A claimant for SSD must prove disability as of the date the worker was last insured.

27.     An individual may be eligible for SSD as a disabled adult child ("DAC") if he or she became disabled prior to age 22 and has an insured parent who is receiving Social Security benefits or is deceased.

28.     An adult individual can be found to be "disabled" for purposes of SSI and SSD if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

29.     An adult individual is found to be disabled if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

30.     The evaluation of medical disability for both SSI and SSD is the same and consists of a "five-step sequential evaluation" codified by SSA.  20 C.F.R. §§ 416.920, 404.1520.

31.     The first step of the sequential evaluation determines whether the claimant is engaged in "substantial gainful activity."

32.     If the claimant is not engaged in such activity, the severity of the claimant's impairment is evaluated in the second step.  An impairment is defined as "severe" if it interferes with basic work-related activities and is expected to result in death or last more than twelve months.

33.     If the impairment is found to be severe, the claimant's impairments are evaluated against the Listing of Impairments ("Listing") contained in SSA's regulations.  20 C.F.R. Pt. 404 Subpt. P. App. 1; 20 C.F.R. §§ 416.920(d), 404.1520(d).  The Listing sets forth a set of symptoms and other criteria specific to several medical conditions.  A claimant can "meet" the Listing and be found disabled with medical evidence that supports the exact requirements of the Listing or "equals" a Listing.

34.     If the claimant's impairment does not meet or equal a Listing, the process moves to the fourth step, with a determination of the claimant's "residual functional capacity."  This finding assesses the claimant's capacity to engage in basic work activities, including prior relevant work.

35.     If the claimant does not retain the residual functional capacity to return to prior relevant work, the process moves to the fifth step, where a determination is made regarding whether the claimant has the capacity to perform other work in the national economy in light of the claimant's residual functional capacity assessment, age, education, and work experience.  If

the claimant cannot perform other work, benefits are awarded.  The burden of proof at this step is on the Commissioner.

36.     Applications for SSI and SSD are initially processed through a network of SSA field offices and state disability determination services.  A claimant begins the process by completing an application and an adult disability report, and submitting the documents to one of SSA's field offices.  In New York, the initial determination of whether a claimant is disabled is made by New York State's Office of Temporary and Disability Assistance ("OTDA"), pursuant to a contract with SSA.  At this stage, OTDA may order a consultative examination of the claimant.

37.     If the claim is denied, that claimant is entitled to a hearing before an ALJ in SSA's ODAR.  The ALJ reviews the claim *de novo*.

38.     ALJ hearings are informal and non-adversarial proceedings.  The claimant may have an attorney or non-attorney act as his or her representative at the hearing.

39.     If the ALJ's decision is adverse to the claimant, he or she may seek review by the Appeals Council, a component of SSA's ODAR.  The Appeals Council has the power to deny the request for review, accept the case for review and deny or grant benefits, or accept the case for review and remand it to an ALJ for further review.  The Appeals Council has the power to review an ALJ's decision *sua sponte* within 60 days of the decision.

40.     On information and belief, the average processing time for the Appeals Council to review a case and issue a decision is fourteen months.

41.     If the claimant disagrees with the Appeals Council's decision or the Appeals Council declines to review the claim, the claimant may seek judicial review in a federal district court pursuant to 42 U.S.C. §§ 405(g), 1383(c).  If a federal court remands the claim, it goes to

the Appeals Council, which may grant benefits or remand the case to an ALJ with instructions.

If a denial from the same ALJ is remanded more than twice, it is the policy and practice of the

Appeals Council to remand to a different ALJ.  A federal court and the Appeals Council can

remand to a different ALJ at any time.

42.     SSI and SSD claimants are often unrepresented by counsel due to a lack of

financial means and/or sufficient information to understand the importance of retaining an

attorney.  In addition, SSI and SSD claimants often have mild or severe mental disabilities.

Many also have limited means of transportation to disability interviews, meetings, and hearings.

Denial of claims can and do have severe consequences for claimants and their families.

**B.**     **Seminal Principles of Social Security Law**

43.     The chronic failure of the Named ALJs to correctly apply the law is all the more

alarming given the well-settled principles that govern the components of an SSA benefits

determination.  Indeed, as evidenced below, the Second Circuit has clearly opined on many of

the standards to be applied and provided the Named ALJs with a roadmap for the correct

adjudication of benefits applications.

**1.**     **Liberal Construction of the Act**

44.     As explained by the Second Circuit in *Cutler v. Weinberger*, 516 F.2d 1282,

1285 (2d Cir. 1975), the Act is "a remedial statute which must be 'liberally applied'; its intent is

inclusion rather than exclusion."

**2.**     **Evidentiary Standard**

45.     It is the longstanding policy of the Commissioner to apply the preponderance of

evidence standard, the traditional evidentiary standard in civil or administrative adjudicatory

proceedings.  This standard of proof applies at all levels of administrative review, but the

Named ALJs effectively, and wrongfully, have held Class Plaintiffs to a much higher standard.

3.      **Treating Physician Rule**

46.      In determining the nature, scope and effect of a disability, an ALJ is required to follow the "Treating Physician Rule." Originally articulated by Courts of Appeals, and later codified by SSA, 20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2), the Treating Physician Rule was intended as a means to control rampant denials of SSI and SSD claims.

47.      Based on the notion that the claimant's treating physician (as opposed to non-treating physicians, typically retained by OTDA and SSA for one-time consultative examinations, and non-examining physicians used to review claims files without ever meeting the claimant) are in a better position to render a reliable diagnosis and prognosis based on the deeper knowledge and insight gained from the physician's longitudinal treatment of the claimant, the Treating Physician Rule requires the decision-maker to give special deference to the treating physician in cases where the medical evidence is in conflict. The application of the Treating Physician Rule is the single-most important determinant in weighing SSI and SSD claims.

48.      For example, in *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir. 1986), the seminal case on the interpretation of the Treating Physician Rule, the Second Circuit held:

> The treating-physician rule governs the weight to be accorded the medical opinion of the physician who treated the claimant . . . relative to other medical evidence before the fact-finder, including opinions of other physicians. The rule, which has been the law of this circuit for at least five years, provides that a treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians, although resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder.

49.      The Second Circuit further honed this directive in *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999), where it held that the opinion of a treating physician must in fact be given

controlling weight if it is well supported by medical finding and not inconsistent with other substantial evidence. The Court held further that ALJs "cannot arbitrarily substitute [their] own judgment for competent medical opinion" and that it is improper for an ALJ to "'set [her] own expertise against that of' the treating physician."

50.     Yet despite this bright-line test, and as evidenced in detail below, the Named ALJs routinely misapply the Treating Physician Rule—a critical component of the eligibility analysis. Their misconduct ranges from entirely ignoring the treating physician to finding obvious pretexts for marginalizing his or her medical opinion. Often, the Named ALJs engage in this illegal behavior because the treating physician's evidence contradicts a conclusion the Named ALJ has already reached.

### 4.     Analysis of Subjective Symptoms

51.     Equally critical to the adjudication of a benefits claim under the Act is the proper analysis of subjective symptoms, including pain. The Second Circuit instructs that claims of pain and functional limitation need not be supported by objective medical evidence. *See Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). Indeed, the Second Circuit cites favorably to the Eighth Circuit's pronouncement that "[a] patient's reports of complaints, or history, is an essential diagnostic tool." *Id.* (citing *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997)). Moreover, "[a]s a general matter, 'objective' findings are not required in order to find that an applicant is disabled." *Green-Younger*, 335 F.3d at 108. Sadly, the record demonstrates that the Named ALJs do not properly assess subjective symptoms. Instead, they readily ignore directives to consider these important components of a claimant's disability, and routinely marginalize any such testimony or evidence if it is not consistent with the ruling, that in many cases, the Named ALJs have pre-ordained.

52.     Moreover, in assessing the degree to which a claimant's pain interferes with his or her ability to work, an ALJ's ability to disregard the claimant's testimony about such pain is strictly limited.  Once a claimant is determined to have a pain-producing disability, the ALJ may not disregard her testimony about the scope of, and limitations created by, such pain.  20 C.F.R. § 404.1529(c)(2)-(3).  Rather, the ALJ must consider seven factors in evaluating a claimant's testimony concerning pain:  (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate pain or other symptoms; (5) any treatment, other than medication that the claimant received; (6) any measures the claimant uses to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i).

**5.     Claimant Credibility**

53.     The ALJs' failure to correctly consider subjective complaints is often manifest in improper credibility determinations.

54.     The proper assessment of a claimant's credibility is of vital importance in determining whether an individual qualifies for benefits.  Accordingly, the Commissioner and the Second Circuit have both issued explicit guidance that an ALJ must adhere to in their adjudication of benefits claims.  In guidance to all ALJs, the Commissioner specifically instructed:

> It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the

weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2 (S.S.A.).

55.     The Second Circuit has additionally clarified that in assessing credibility, "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983).

56.     Once again, despite having been provided with a clear set of guidelines for assessing credibility, the record demonstrates that the Named ALJs operate as if there are no guidelines at all.  Routinely, the Named ALJs disregard the factual evidence in the record and substitute their own opinions in place of a claimant's testimony.  Additionally, in multiple instances, the Named ALJs failed to accord the appropriate weight to a claimant's previous work experience.

**6.     Duty to Develop the Record**

57.     Whether or not a claimant has counsel, and often they do not, an ALJ is required to develop the evidentiary record pursuant to 20 C.F.R. §§ 416.912, 404.944, and 404.1512, and seek additional information from the treating physician.  The Court of Appeals for the Second Circuit has held that an ALJ has an affirmative duty to develop the administrative record and that it is the duty of an ALJ to seek additional information from the treating physician *sua sponte* where clinical findings are inadequate.  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  This duty includes the responsibility to investigate and develop evidence and arguments in favor of and against awarding benefits.

58.     As demonstrated below, the Named ALJs consistently and chronically fail to satisfy their obligation to create the proper record.

7. **Use of a Vocational Expert**

59.     The Second Circuit has also provided instructions governing the proper implementation of a vocational expert to supplement the use of medical-vocational guidelines in assessing a claimant's ability to perform work.  In *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986), the Second Circuit held:

> [A]pplication of the grid guidelines and the necessity for expert testimony must be determined on a case-by-case basis.  If the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate. But if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments.

60.     The Second Circuit, through its decision in *Bapp*, established a test that hinges the need for a vocational expert upon the non-exertional impairments of the claimant.  Yet despite this clear directive, and as evidenced repeatedly below, the Named ALJs fail time and time again to properly utilize vocational experts, and instead thrust their own biased opinions into the evaluation of non-exertional impairments to the great detriment of the claimants.

*       *       *

61.     The practical effect of the Named ALJs' failure to follow these long-standing and clear principles is a tremendous waste of judicial resources.  The manifest errors cause claimants to spend years, and sometimes more than a decade, being shuttled back and forth between the multi-layered bureaucracy.  Tellingly, several of the rulings made by this Court and discussed herein, reflect the district court judges' frustration with the Named ALJs for repeating the exact same mistakes in the exact same manner over and over again.  Based on their complete lack of faith in the Named ALJs' ability to carry out their mandate, in many instances the cases at issue are either remanded to different ALJs or remanded solely for a benefits calculation.

C.    **The Queens Office Of Disability Adjudication & Review**

62.    According to the hiring standards set forth by the U.S. Office of Personnel
Management, "ALJs serve as independent impartial triers of fact in formal proceedings
requiring a decision on the record after the opportunity for a hearing." The Association of
Administrative Law Judges, representing ALJs employed by the Commissioner, has noted that
"the administrative law judges in [SSA] have the responsibilities of developing a complete
record for both parties; to protect the trust fund as well as the due process rights of the claimant;
and render a legally defensible decision based on the evidence in the hearing record."

63.    The Commissioner employs ALJs, pursuant to 5 U.S.C. § 3105, to adjudicate
claims for benefits under the Act in Queens, New York, and assigns them to various hearing
offices. There are currently eight ALJs assigned to QODAR, including QODAR's Chief ALJ
Nisnewitz, and ALJs Cofresi, Fier, Hoppenfeld, and Strauss.

64.    The Named ALJs are not fair adjudicators; they each have a general bias against
SSA claimants and use any means available, legal or not, to prevent claimants from having fair
hearings before an impartial decision maker, and to deny valid claims.

65.    The bias of the Named ALJs is described in four sections below:

a.    **Section 1** reviews the history of bias of each Named ALJ based on
published and unpublished judicial decisions.

b.    **Section 2** discusses the Commissioner's indifference, and failure to act,
in response to this pattern and practice of gross misconduct, which made
this lawsuit (and the relief sought by plaintiffs) the last resort.

c.    **Section 3** addresses the lack of public accountability for ALJs.

d.    **Section 4** addresses the specific mistreatment of plaintiffs and class
members by the Named ALJs.

1.     **History of Bias**

66.     The Named ALJs each have a clear and unambiguous history of bias against SSI and SSD claimants.  Their disturbing pattern of conduct, which the Commissioner has failed to address or remediate, is demonstrated conclusively by their: (1) routine failure to develop the administrative record; (2) routine failure to follow the law; (3) erroneous and faulty credibility determinations; and (4) aberrantly high denial rates.  Each category of misconduct is described below for each ALJ.

a)     **Chief ALJ David Z. Nisnewitz**

67.     Since January 1, 2008, thirteen district court cases identified ALJ Nisnewitz as the author of the decision under review.  In these federal court opinions he was found to have committed error in ten cases.  There is little doubt, when the overall record is considered, that Chief ALJ Nisnewitz's consistent errors are highly probative of his anti-claimant bias.

(1)     **Failure to Develop the Record**

68.     In a vast majority of ALJ Nisnewitz's cases, this Court found him in error for failing to discharge his duty to "affirmatively develop the record."  The Courts' factual findings are wholly consistent with a clear pattern of denial of meritorious claims based on pre-existing bias against claimants.  Below are several notable examples, demonstrating this clear pattern between 2008 and the present:

69.     In *Ginsberg v. Astrue*, 2008 WL 3876067 (E.D.N.Y. Aug. 18, 2008), ALJ Nisnewitz denied benefits to a 55-year-old *pro se* claimant who experienced extended periods of being completely bedridden and multiple chronic conditions.  This Court found that ALJ Nisnewitz made numerous errors and was unfair.  Noting that "the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," the Court found him in dereliction of his duty.  For example:

a.   Rather than calling witnesses to develop the record, ALJ Nisnewitz callously stated, "I don't make calls."

b.   ALJ Nisnewitz's response to a *pro se* claimant's request for guidance on how to establish a doctor's expertise were "intemperate, brusque, and unhelpful."

c.   ALJ Nisnewitz's questioning of another medical expert was, according to the Court, "a study in combative questioning, which hampered the truth seeking process."

d.   ALJ Nisnewitz constantly interrupted a treating physician's testimony with leading questions designed "to elicit the responses he apparently wanted or expected to hear."

e.   His manner of conduct chilled the *pro se* claimant during the Commissioner's case, resulting in "virtually no cross-examination at all."

f.   Based on these errors, the Court found ALJ Nisnewitz was "a far cry" away from satisfying his duty to develop the record.  Thus, the Court vacated and remanded.

70.   In *Rudt-Pohl v. Astrue*, 2009 WL 2611320 (E.D.N.Y. Aug. 25, 2009), ALJ Nisnewitz denied benefits to claimant twice and was found both times to have failed to properly develop the record.  This Court found that "[claimant] has a very serious medical condition [an allergy] that clearly dominates her life."  In fact, claimant's allergy was so severe that she had an acute allergic reaction in front of ALJ Nisnewitz, forcing her to attend the adjourned hearing telephonically.  Ignoring the evidence, ALJ Nisnewitz found that claimant could hold a job and denied her benefits claim, a decision this Court held was based on no proof at all.  For these

reasons, the Court found that the "ALJ's conclusion cannot be sustained on the record before

this Court," vacated his decision, and remanded the matter solely for the calculation of benefits.

71.    In *Larkins v. Astrue*, 2009 WL 3148763 (E.D.N.Y. Sept. 29, 2009), ALJ

Nisnewitz had denied benefits to a multiple sclerosis victim, who had an impressive 30-year

work history.  ALJ Nisnewitz had been remanded earlier in this case by the Second Circuit

Court of Appeals for his failure to develop the record, including a failure to resolve

inconsistencies in the medical testimony.  In addition to legal errors (discussed below), this

Court found that ALJ Nisnewitz failed again to develop the record.  "Here," the Court

explained, "over the course of twelve years, the record has been developed and reviewed by the

ALJ, twice."  Nevertheless, the Court found that ALJ Nisnewitz's determination was "not

supported by substantial evidence."  The Court further found that, "[a]lthough the Court of

Appeals for the Second Circuit instructed the ALJ to resolve the apparent tension [between two

physicians], the ALJ failed to do so."  Rather than acceding to the Commissioner's request for

further remand for additional proceedings, the Court made a finding of disability and remanded

solely for the calculation of benefits.

72.    In *Baldwin v. Astrue*, 2009 WL 4931363 (S.D.N.Y. Dec. 21, 2009), this Court

again found that ALJ Nisnewitz "neglected his duty to properly develop the record," stating that

he failed to consider "the incompleteness of the record before him" in making his adverse

benefits decision, and that he "failed to meet his responsibility to resolve ambiguities or

evidentiary gaps in the record."  The Court remanded, further finding that ALJ Nisnewitz's

"failure to acknowledge relevant evidence or to explain its implicit rejection is plain error."

73.    In *Gross v. Astrue*, 2010 WL 301945 (E.D.N.Y. Jan. 15, 2010), this Court went

even farther, finding that ALJ Nisnewitz's behavior "raises the possibility that the ALJ was not

seeking neutrally to develop the record, but rather to find support for the conclusions he had already formed in his first decision." ALJ Nisnewitz had denied benefits, twice, to a claimant suffering from severe conditions, including congenital hip dysplasia and associated osteoarthritis. Among other errors, ALJ Nisnewitz again "failed to develop the medical record, failed to consider the proper factors in evaluating [claimant's] claims of subjective pain, and failed to provide a function-by-function assessment of [claimant's] ability to do work-related activities." Using an unusual remedy, but one used all too often for the Named ALJs, the Court ordered the Commissioner to assign the case to a new ALJ on remand. In doing so, the Court concluded that ALJ Nisnewitz's conduct suggested a lack of impartiality and a dereliction of his duties.

74.     In *Aas v. Astrue*, 2010 WL 3924687 (E.D.N.Y. Sept. 29, 2010), ALJ Nisnewitz denied benefits to a former New York City firefighter with severe medical conditions, including spinal disk degeneration, depression, and associated alcoholism. This Court found that ALJ Nisnewitz had denied benefits without developing and evaluating all available evidence. Indeed, ALJ Nisnewitz erred, according to the Court, in rejecting claimant's benefits without even mentioning the limits of claimant's ability to move. ALJ Nisnewitz failed to seek any evidence on this important issue.

75.     In *Legare v. Astrue*, 2010 WL 5390958 (E.D.N.Y. Dec. 22, 2010), this Court excoriated ALJ Nisnewitz, stating that his determination of claimant's income eligibility and his analysis "were so deficient and so incoherent as to prevent meaningful review of his decision." The Court called ALJ Nisnewitz's analysis "opaque and nonspecific," and found his decision "so palpably deficient" that it ordered a remand. Convinced that ALJ Nisnewitz could not fairly develop the record, the Court ordered the Commissioner to assign the matter to a different ALJ.

76.     In *Smith v. Astrue*, 2011 WL 1253233 (E.D.N.Y. Mar. 31, 2011), this Court found that ALJ Nisnewitz "failed to develop the record enough to show that his decision was supported by substantial evidence." ALJ Nisnewitz neglected to obtain records from claimant's actual treating physician prior to 2006, disregarded the treating physician's diagnosis of osteoarthritis, and discounted claimant's complaints regarding her severe impairment because the incomplete records reflected the diagnosis "on only one occasion." The Court emphasized that not only is there "no rule requiring a claimant's impairments to be diagnosed more than once," but ALJ Nisnewitz "should have examined the physician's treatment records and addressed any remaining questions or doubts to that physician." The Court held that ALJ Nisnewitz's most recent failure to properly develop the record required remand.

### (2)     Failure to Follow the Law

77.     In a clear majority of ALJ Nisnewitz's cases, this Court found error for failing to follow the law, including by repeatedly ignoring the Treating Physician Rule. Below are several notable examples, demonstrating a clear pattern between 2008 through the present:

78.     In *Ginsberg v. Astrue*, 2008 WL 3876067 (E.D.N.Y. Aug. 18, 2008), this Court remanded ALJ Nisnewitz's denial for, among other errors, failing to follow the Treating Physician Rule. ALJ Nisnewitz erroneously gave little weight to two physicians' findings. The Court found further error because ALJ Nisnewitz relied, instead, on a non-treating expert, who only reviewed claimant's medical records. Further, the Court found objectionable ALJ Nisnewitz's decision to interrupt and curtail claimant's counsel's cross-examination of that non-treating physician. Citing other "inexplicabl[e]" errors, the Court also decried ALJ Nisnewitz's reliance on a previously discredited orthopedist as a basis for benefits denial, ignoring the Court's prior determination that the orthopedist's "slipshod and specious" analysis thwarted

22

"the ability of legitimately disabled individuals . . . to receive the much-needed compensation to which they are entitled."

79.    In *Rudt-Pohl v. Astrue*, 2009 WL 2611320 (E.D.N.Y. Aug. 25, 2009), ALJ Nisnewitz denied benefits to a 65-year-old former nurse.  This Court found that, among other maladies, the claimant suffered from a "quite critical" allergy, which resulted in an attack in front of ALJ Nisnewitz and the Commissioner's own medical expert.  Based on that attack, the Commissioner's own expert conceded the allergy was "significant," and further found that claimant's allergy "threatens her life on a 'moment to moment' basis and 'can occur at any time without any warning, and without being aware of the noxious agent that precipitates the attack.'"  The Commissioner's own expert further testified that it was "virtually impossible" to determine whether a particular work environment would trigger a potentially life-threatening allergic reaction.  Despite the overwhelming evidence, ALJ Nisnewitz found that claimant could safely work.  The Court found ALJ Nisnewitz's determination was based on "no evidence." Instead, the Court found that he relied on "spare and conclusory responses to the ALJ's" own questions.  The Court remanded only for the calculation of benefits.

80.    In *Larkins v. Astrue*, 2009 WL 3148763 (E.D.N.Y. Sept. 29, 2009), this Court held that ALJ Nisnewitz "improperly discounted the opinion of treating physicians, including the neurologist . . . who had treated claimant for at least seven years," and instead relied on a non-treating government doctor engaged only for the purpose of the hearing.  In a common theme, the Court emphasized that "the ALJ imposed a stricter standard than is required by law." His decision to cherry-pick medical opinions supporting an adverse finding toward claimant "undermine[d] the court's confidence in the ALJ's assessments of the medical evidence."

Contrary to ALJ Nisnewitz's determination, the Court found that the medical evidence established a right to benefits, and the Court remanded only for a calculation of benefits.

81.     In *Baldwin v. Astrue*, 2009 WL 4931363 (S.D.N.Y. Dec. 21, 2009), this Court found, again, that ALJ Nisnewitz failed to abide by the Treating Physician Rule. Again, the Court was forced to remand in the face of ALJ Nisnewitz's "un-explained decision to credit the opinion of Dr. Rothenberg, a non-examining source, over the [treating physician]," which the court called "improper."

82.     In *Gross v. Astrue*, 2010 WL 301945 (E.D.N.Y. Jan. 15, 2010), this Court determined that ALJ Nisnewitz "disregard[ed] the treating physician's opinion, [and] . . . in effect made [his own] medical findings concerning" plaintiff's hip pain. In doing so, ALJ Nisnewitz violated a basic precept of the benefit-review process by "form[ing] his own medical opinion" and "set[ting] his own expertise against that of a physician." He also erred by "failing to provide a basis for disregarding the treating physician's opinion" and, instead, relied upon a purported medical expert who "agreed to cease treating patients in the face of multiple charges of malpractice." ALJ Nisnewitz's conduct is all the more egregious considering that the Appeals Council had previously remanded this action due to the reversible error he had committed. Accordingly, after a second remand was warranted for the exact same errors, the Court ordered the case assigned to a different ALJ, apparently acknowledging that ALJ Nisnewitz was incapable of properly adjudicating this claim.

83.     Similarly, in *Calderon v. Astrue*, 683 F.Supp.2d 273 (E.D.N.Y. 2010), this Court ordered a second remand of ALJ Nisnewitz's denial based on his repeated failure to properly apply the law. In 2000, ALJ Nisnewitz's decision was vacated and the matter remanded to him for further proceedings because of his failure to give controlling weight to the claimant's

treating physician.  A decade later in 2010, the claimant's case was again before this Court, and

again, the Court found reversible error.  In remanding ALJ Nisnewitz's decision a second time,

the Court highlighted his wrongful maneuvering, stating:

> The Court gave Nisnewitz an opportunity to correct his step-five error nearly ten
> years ago.  Instead, he disregarded the Court's mandate and changed his step-
> four determination, a tactic that at least suggests an improper attempt to justify,
> by whatever means necessary, a preordained conclusion that [claimant] was not
> disabled.  For these reasons, the Court concludes that remand for the calculation
> of benefits is warranted.

84.     While ALJ Nisnewitz received public rebuke, the real suffering was left to the

claimant who spent ten unnecessary years deprived of disability benefits so that ALJ Nisnewitz

could further his improper agenda.

85.     In *Smith v. Astrue*, 2011 WL 1253233 (E.D.N.Y. Mar. 31, 2011), this Court

found that ALJ Nisnewitz did not "abide by the treating-physician rule" because he knowingly

ignored health records that were available for inspection and instead misleadingly asserted that

there was a "lack of record" supporting claimant's symptoms.  Instead of according the

appropriate weight to the treating physicians and their associated records, ALJ Nisnewitz relied

upon a non-treating physician whose testimony was "afflicted by several defects:  cherry-

picking from the record, mischaracterizing the record, and placing weight . . . on facts in the

record that do not bear that weight."  The Court emphasized that ALJ Nisnewitz should have

contacted the treating physician to give him a chance to address any discrepancy ALJ Nisnewitz

saw in his assessment.  Based on these failures to properly apply the law, among other errors,

the case was remanded for proper application of the Treating Physician Rule.

### (3)     Erroneous Credibility Determination

86.     In several cases, this Court found ALJ Nisnewitz in error for making adverse

credibility findings against claimants, including by consistently disregarding their description of

the pain endured as a result of their disabling conditions.  Below are several notable examples, demonstrating a clear pattern between 2008 and the present:

87.     In *Ginsberg v. Astrue*, 2008 WL 3876067 (E.D.N.Y. Aug. 18, 2008), ALJ Nisnewitz "summarily determined that Plaintiff was not entirely credible" without fully understanding the nature of her affliction.  In ruling that his credibility determination lacked basis, this Court noted that claimant's ability to care for herself at times was wholly consistent with the fluctuations in frequency and severity of her chronic fatigue syndrome.  The Court remanded the case, with specific directions to review claimant's credibility according to law.

88.     In *Larkins v. Astrue*, 2009 WL 3148763 (E.D.N.Y. Sept. 29, 2009), ALJ Nisnewitz failed to accord the proper weight to claimant's "long employment history" and found claimant's multiple sclerosis-related pain complaints not credible in light of the MRI results.  In remanding the case solely for the calculation of benefits, this Court found claimant's statements to be supported by the reports of multiple neurologists and determined that "no evidence [existed] that [claimant] is prone to exaggeration."

89.     In *Gross v. Astrue*, 2010 WL 301945 (E.D.N.Y. Jan. 15, 2010), ALJ Nisnewitz found claimant's complaints of pain related to her documented congenital hip dysplasia lacked credibility, and he erroneously opined that "there is little in the record to support this allegation objectively."  He based his rejection of claimant's credibility on the timing of her application for disability benefits, which coincided with the birth of her second child, leading him to theorize—without any support in the record—that claimant was trying to game the system by using Social Security benefits to support her child.  In remanding the matter for additional proceedings, the Court found that ALJ Nisnewitz "rejected plaintiff's claims of subjective pain without any meaningful basis in the record for doing so."

#### (4)  **High Denial Rate**

90.     Disposition data for 2005-2008 shows that ALJ Nisnewitz denied 56% of the claims before him, a rate 28 percentage points higher than the average.  In fact, ALJ Nisnewitz was in the top 5% of deniers nationally for that period.

91.     More recent data confirms this stunning trend has continued, as ALJ Nisnewitz's denial rate for the period between September 25, 2010 and February 25, 2011 (the most recent reporting period for SSA) has in fact increased to 61.7%.

#### b)  **ALJ Michael D. "Manuel" Cofresi**

92.     Since January 1, 2008, nineteen district court cases identified ALJ Cofresi as the author of the decision under review.  This Court found he committed errors serious enough to warrant remand in fourteen cases.  There is little doubt, when the overall record is considered, that ALJ Cofresi's consistent errors are highly probative of his anti-claimant bias.

#### (1)  **Failure to Develop the Record**

93.     In several of ALJ Cofresi's cases, this Court found him to be in error for failing to develop the record.  The Court's factual findings are wholly consistent with a clear pattern of his denial of meritorious claims based on pre-existing bias against claimants.  Below are several notable examples, demonstrating a clear pattern between 2008 and the present:

94.     In *Day v. Astrue*, 2008 WL 63285 (E.D.N.Y. Jan. 3, 2008), this Court found that ALJ Cofresi decided "to read conclusions into the Medical Expert's testimony that are not supported therein" and, through his questioning, "succeeded in convincing [the expert] to cabin her initial conclusion."  The Court also found that ALJ Cofresi decided to "discredit the treating physician's conclusions because of his penmanship."  The Court cautioned ALJ Cofresi, on remand, against basing his decision on "retrospective opinions" by non-treating physicians, and the court imposed a strict 90-day time limit on remand proceedings.

95.     In *Taylor v. Astrue*, 2008 WL 2437770 (E.D.N.Y. June 17, 2008), the Commissioner conceded that ALJ Cofresi erred, and this Court found that, among many other errors, ALJ Cofresi had failed in his fundamental duty "to elicit further supporting information" before rejecting a doctor's medical opinion.

96.     In *Vicari v. Astrue*, 2009 WL 331242 (E.D.N.Y. Feb. 10, 2009), the Commissioner agreed, on appeal, that ALJ Cofresi's underlying decision contained "multiple legal errors and cannot be affirmed." Among other errors, the Court found that ALJ Cofresi's determination about the severity of claimant's disability was "at odds with established precedent." The Court was so concerned about ALJ Cofresi's conduct that it ordered a new ALJ to preside over the case on remand. Taking additional precaution, the Court included lengthy directives to the new ALJ, to make sure the record was fully developed on remand and all medical evidence considered objectively.

97.     In *Valerio v. Comm'r Soc. Sec.*, 2009 WL 2424211 (E.D.N.Y. Aug. 6, 2009), this Court again reversed ALJ Cofresi's decision, this time with a specific order to award benefits to the claimant. The Court used harsh language to describe the claimant's plight: "[n]ow, after the ALJs' and Appeals Council's repeated misapplication of the treating physician's rule and failure to supplement the record, and ten years since plaintiff originally filed for SSD[] benefits, there is no showing that further development of the record and additional proceedings would result in the evidence required to substantiate a conclusion that [claimant] is not disabled." To the contrary, the court found "substantial evidence in the record that [claimant] is disabled," and ordered benefits to be awarded.

98.     In *Lopez v. Comm'r of Soc. Sec.*, 2009 WL 2922311 (E.D.N.Y. Sept. 8, 2009), this Court found that ALJ Cofresi failed to "supplement the administrative record" as was his

"affirmative duty."  The Court found that, although ALJ Cofresi disregarded medical testimony because of inconsistencies in, or an absence of, those physicians' medical records, he "failed" or "made no attempt" to get the records.

99.    In *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F.Supp.2d 330 (E.D.N.Y. 2010), this Court found that ALJ Cofresi failed to develop the record sufficiently, including by failing to obtain "any treatment records" demonstrating claimant's disability.  The Court held that the record included "numerous references—spanning dozens of pages . . . [but that the treating doctors records and notes were] conspicuously absent from the record."  Indeed, the court concluded that ALJ Cofresi, rather than addressing the merits of claimant's disability "omitted *any* discussion of the nature or severity of" claimant's disability or its impact on his functioning.  Because of the Court's assessment that the record was "so deficient" and ALJ Cofresi's delay was "particularly egregious," the Court mandated that remand proceedings occur within 120 days.

100.    In *Talavera v. Astrue*, 2010 WL 3325408 (E.D.N.Y. Aug. 19, 2010), ALJ Cofresi inherited a case where a claimant had to endure a 10-year fight to secure benefits, during which ALJ denials from QODAR were remanded three separate times for failing to follow the law and failing to develop the record.  At a fourth hearing, ALJ Cofresi again denied benefits, failing to address claimant's obesity as a disability.  Though complimentary of his handling of a complex case with a long history, the Court nevertheless remanded, finding:  "[a]ll previous remand orders in this matter have also stated that the ALJ is to evaluate [claimant's] obesity under the applicable Social Security ruling," but that ALJ Cofresi failed to do so.  ALJ Cofresi also failed to develop the record concerning claimant's "fibromyalgia-like syndrome."  Despite specific

directions from the Appeals Council to develop the record on these two issues, "no attempt to supplement that record has been shown."

101.    In *Holder v. Astrue*, 2010 WL 3322507 (E.D.N.Y. Aug. 20, 2010), this Court found that ALJ Cofresi again failed to develop the record, in a case involving a *pro se* claimant. In doing so, ALJ Cofresi repeatedly noted that information was missing from the factual record, but "nevertheless reached a conclusion as to [claimant's] disability," ignoring his "heightened obligation" to develop the record.

### (2)    Failure to Follow the Law

102.    In several of ALJ Cofresi's cases, this Court found him to be in error for failing to follow the law, including by repeatedly ignoring the Treating Physician Rule. Below are several notable examples, demonstrating a clear pattern between 2008 and the present:

103.    In *Kirkland v. Astrue*, 2008 WL 267429 (E.D.N.Y. Jan. 29, 2008), this Court did not need to find that ALJ Cofresi failed to follow the Treating Physician Rule, because the Commissioner conceded as much on appeal. ALJ Cofresi had denied benefits, and the case went to the Appeals Council for review. The Appeals Council reversed, finding that "a significant amount of medical evidence was missing from the file." On remand, ALJ Cofresi conducted more proceedings and issued an opinion that "discounted the opinions of every doctor other than" one who had never examined the claimant (and found no evidence of a disability). The Appeals Council remanded again with specific directions. After another hearing, ALJ Cofresi again denied benefits, again failing to fully address the Appeals Council's concerns. The Appeals Council this time denied review. After the claimant filed an action in the Eastern District, the Commissioner conceded error. This process, and all its many proceedings, left the claimant without benefits from 1994 until 2006. In remanding the case of a claimant with a 22-year work history at the same job before becoming disabled, the Court

found that "[a]lthough it has been almost 15 years since [claimant] first filed for benefits, there are still significant gaps in the record and inconsistencies in the medical evidence."

104.    In *Taylor v. Astrue*, 2008 WL 2437770 (E.D.N.Y. June 17, 2008), this Court again was compelled to remand a decision by ALJ Cofesi for his failure to follow the Treating Physician Rule.  While recognizing the discretion to assign less weight under the rule, the Court bluntly chided him, saying "[w]hen a treating physician's medical opinion is not given controlling weight, an ALJ cannot simply disregard it outright."  The Court found that, through claimant's "decade[-]long sojourn" to secure benefits, ALJ Cofresi "twice committed legal error . . . even after explicit instructions from the Second Circuit."  Indeed, the Court further found that ALJ Cofresi's repeated commissions of legal error "[demonstrated] serious negligence and could possibly even suggest bias."

105.    In *Vicari v. Astrue*, 2009 WL 331242 (E.D.N.Y. Feb. 10, 2009), the Commissioner conceded ALJ Cofresi's "multiple legal errors."  In deciding to remand to a new ALJ, this Court bemoaned the "manifest legal errors," which had the effect of dragging the claimant "up and down the administrative ladder."  The Court put the problem in blunt terms: "the fact remains that [ALJ Cofresi's decision], which was authored with the benefit of multiple remand orders from the Appeals Council, contained fundamental errors of law and evinced a failure on the part of the presiding ALJ to consider the full medical evidence before him."

106.    In *F.M. on behalf of B.M., an infant*, 2009 WL 2242134 (E.D.N.Y. July 27, 2009), ALJ Cofresi ignored "persuasive proof" of an infant's disability, including "severe receptive and expressive language delays," causing the Commissioner to concede error on appeal.  This Court found it would be "futile" to remand the matter, because "the only conclusion supported by the record evidence is that [the infant] suffers" from a disability.

107.    In *Lopez v. Comm'r Soc. Sec.*, 2009 WL 2922311 (E.D.N.Y. Sept. 8, 2009), this Court found that ALJ Cofresi violated the Treating Physician Rule with his "impermissible evaluation of [the doctor's] findings based on his own judgment." Indeed, ALJ Cofresi "noted that five physicians, including [claimant's] three treating physicians, determined that [claimant] was disabled, [but] he did not explain why the balance of the medical evidence justified disregarding those opinions." In this regard too, the Court found that ALJ Cofresi engaged in "speculation" and "improperly applied his own judgment" rather than objectively evaluating the overall medical evidence.

108.    In *King v. Astrue*, 2009 WL 3300261 (E.D.N.Y. Oct. 14, 2009), this Court found that ALJ Cofresi "disregard[ed] the treating physicians' opinions," in violation of "controlling regulations." In this matter, ALJ Cofresi ignored not just one but three consistent opinions from claimant's treating physicians. The Court found remand futile, saying "this is [claimant's] eleventh judicial proceeding following her request for [benefits] over twelve years ago." Thus, the Court awarded benefits.

109.    In *Regan v. Astrue*, 2010 WL 1459194 (E.D.N.Y. April 12, 2010), this Court remanded ALJ Cofresi's denial of benefits, again, because of his violation of the Treating Physician Rule. The Court found that ALJ Cofresi "rejected entirely" the doctor's diagnosis despite the fact that it was "based on the sorts of observable medical signs and symptoms well-accepted within" the doctor's field of expertise.

110.    In *Milien v. Astrue*, 2010 WL 5232978 (E.D.N.Y. Dec. 16, 2010), this Court remanded ALJ Cofresi's denial of benefits to a woman with a 24-year work history, who suffered from AIDS-related dementia and obesity. The Court catalogued a laundry list of

errors, including ALJ Cofresi's failure to state any basis for disregarding a "potentially

dispositive [medical] report" from claimant's treating physician.

### (3)    Erroneous Credibility Determinations

111.    In several cases, this Court found ALJ Cofresi in error for making adverse

credibility findings against claimants, including by consistently disregarding claimants'

description of the pain endured because of their disabling conditions.  Below are several notable

examples, demonstrating a clear pattern between 2008 and the present:

112.    In *King v. Astrue*, 2009 WL 3300261 (E.D.N.Y. Oct. 14, 2009), this Court found

that ALJ Cofresi "did not objectively assess the credibility of" the claimant.  The claimant had

testified about multiple places where her condition caused pain, which she rated "as a seven on

a scale of 10."  The claimant testified that her pain limited her ability "to carry more than five

pounds."  Indeed, she testified that, because of her condition, she "cannot hold a cup for too

long before it slips out of her hand."  The Court found these descriptions "supported by the

extensive record in this case."

113.    In *Regan v. Astrue*, 2010 WL 1459194 (E.D.N.Y. April 12, 2010), this Court

found that ALJ Cofresi's decision to discredit a claimant "was not based on an evaluation of the

appropriate factors."  While rejecting claimant's testimony about "panic attacks, debilitating

depression, and [daily] visual hallucinations of her deceased daughter," ALJ Cofresi instead

relied on "his interpretation of counseling records . . . suggesting that [claimant's] symptoms

had improved."  He did so despite the absence of such an opinion from any doctor.

114.    In *Milien v. Astrue*, 2010 WL 5232978 (E.D.N.Y. Dec. 16, 2010), this Court

remanded ALJ Cofresi's denial of benefits to a woman with a 24-year work history who

suffered from AIDS-related dementia and obesity.  ALJ Cofresi found claimant's testimony

lacked credibility, in part, because she had not sought treatment for her dementia-related symptoms. The Court said,

> [Although claimant] did not allege that her failure to seek psychological treatment was due to her financial status, it was not proper for the ALJ to draw an inference against her given that, moments prior to being asked about her psychological treatment, she had stated that she could no longer visit her infectious disease specialist due to her lack of insurance . . . if the ALJ was concerned about [claimant's] reasons for not seeking psychological treatment, he should have asked her about them. Perhaps, upon hearing the answer, he might not have concluded that she was testifying falsely about her pain and depression.

### (4)   **High Denial Rate**

115.   Disposition data for 2005-2008 (the period immediately preceding all of the matters described above), shows that ALJ Cofresi denied 57% of the claims before him, a rate 29 percentage points higher than the national average. In fact, ALJ Cofresi was in the top 4% of deniers nationally for that period.

116.   More recent data confirms this stunning trend has continued, as ALJ Cofresi's denial rate for the period between September 25, 2010 and February 25, 2011 (the most recent reporting period for SSA) in fact increased to 62.9%.

### c)   **ALJ Seymour Fier**

117.   Since January 1, 2008, twelve district court cases identified ALJ Fier as the author of the decision under review. This Court found he committed error serious enough to warrant remand in ten cases. There is little doubt, when the overall record is considered, that ALJ Fier's consistent errors are highly probative of his anti-claimant bias.

### (1)   **Failure to Develop the Record**

118.   In several of ALJ Fier's cases, this Court found him to be in error for failing to develop the record. The Court's factual findings are wholly consistent with a clear pattern of

his denial of meritorious claims based on a pre-existing bias against claimants.  Below are several notable examples, demonstrating a clear pattern between 2008 and the present:

119.    In *Gonzalez v. Astrue*, 2008 WL 755518 (E.D.N.Y. Mar. 20, 2008), this Court had earlier remanded ALJ Fier's denial of benefits based on his failure to adequately develop the evidentiary record.  When the case came back to the Court, it was clear that ALJ Fier had not followed the Court's instructions.  The Commissioner, in fact, agreed to remand.  Not only had ALJ Fier again failed to develop the record, but he also relied on the opinion of an SSA expert who had been "remov[ed] from the New York State Agency panel of physicians eligible to perform consultative examinations for the [SSA]."  He did so despite a specific, internal directive from the SSA that the expert's opinions were "no longer entitled to any weight."  Thus, on remand, the Court specifically had to instruct ALJ Fier not to rely on that expert's report, and, in light of the fact that the claimant had "endured significant delays," the Court "strongly urge[d]" the Commissioner to resolve the matter within 90 days.

120.    In *Rustico v. Astrue*, 2008 WL 2622926 (E.D.N.Y. July 1, 2008), this Court remanded ALJ Fier's denial of benefits to a 65-year-old woman who had worked at the same job for 22 years.  Finding that ALJ Fier failed to develop the record, including by deciding that an indigent woman should have paid for medical tests to prove her disability, the court gave a special instruction on remand:  "[t]he ALJ is further ordered to refrain from making medical findings and to reevaluate [claimant's] credibility."  The Court further found that ALJ Fier's decision was "replete with conclusory statements and without specific references to the medical record necessary for the effective review of the Commissioner's decision."  The Court ordered the Commissioner to "commence [further] proceedings within sixty days" of the Court's order.

121.   In *Savino v. Astrue*, 2009 WL 2045397 (E.D.N.Y. July 8, 2009), this Court remanded ALJ Fier's denial of benefits based on numerous failures to develop the record, despite his affirmative obligation to do so. ALJ Fier committed these errors and ignored "explicit instructions" from the Appeals Council, which had previously remanded the case to correct prior errors. In evaluating ALJ Fier's decision, the Court said, "ALJ Fier's reasoning does not make sense." The Court further observed, "ALJ Fier ignored the remand order to use a vocational expert to help determine whether plaintiff could perform his past relevant work." Despite instructions from the Appeals Council that the new testimony should be used to address any conflicts in the record, ALJ Fier also "confined" a new medical expert's testimony to resolving an inconsistency between two other experts. And, over claimant's objection, ALJ Fier refused to provide claimant's expert with all relevant medical records. For these and other reasons, the Court concluded: "[i]n sum, ALJ Fier disregarded the Appeals Council's explicit directives. On that basis alone, remand is required."

122.   In *Zubizarreta v. Astrue*, 2010 WL 2539684 (E.D.N.Y. June 16, 2010), this Court remanded ALJ Fier's denial of disability benefits to a retired police sergeant with nearly 20 years of service based on "several legal and factual errors." Embarrassingly, the Commissioner was forced to concede error and consent to remand despite the Appeals Council having previously remanded ALJ Fier's denial based on earlier errors. In this second review, the Court found a litany of errors, including ALJ Fier's reliance on allegedly contradictory medical opinions. "[A] closer review," according to the Court, "indicates that a majority of the physicians' findings are consistent" with the treating physician's determination. Noting that ALJ Fier had "two chances to fully develop the record," the Court concluded that further proceedings were "futile" and directed remand solely for the calculation of benefits. Not

surprisingly, the Court, again, directed that remand be to a different ALJ. In this instance, the Commissioner also agreed. Still, the Court gave special instructions for additional determinations about the onset date for claimant's disability, requiring that the new ALJ offer "a convincing rationale for the date chosen."

123.     In *McDowell v. Comm'r of Soc. Sec.*, 2010 WL 5026745 (E.D.N.Y. Dec. 3, 2010), this Court remanded ALJ Fier's denial of benefits. In doing so, a frustrated Court recounted ALJ Fier's view that claimant's disability was not sufficiently severe to merit benefits. "In his Notice and Decision, however, the ALJ did not devote even a single sentence of analysis to [support] this finding." In response to the Commissioner's position that a single line of testimony in the hearing transcript was support for ALJ Fier's decision, the Court gave a terse response: "[s]uffice it to say that the single line of testimony from the medical examiner was not 'substantial evidence' for the ALJ to make his determination." To further punctuate the Court's frustration, the Court directed the Commissioner "to assign the claim to a different ALJ" on remand. The Court also gave specific instructions, based on problems inherent in the testimony of the Commissioner's vocational expert, that "the Commissioner must obtain new testimony from a [vocational expert]."[1]

### (2)     Failure to Follow the Law

124.     In several of ALJ Fier's cases, this Court found him to be in error for failing to follow the law, including by repeatedly ignoring the Treating Physician Rule. Below are several notable examples, demonstrating a clear pattern between 2008 and the present:

---

[1]  Similarly, in *Murray v. Astrue*, 2010 WL 5290063 (E.D.N.Y. Dec. 20, 2010), this Court found that ALJ Fier erred by refusing plaintiff's request to call a vocational expert and that ALJ Fier had misstated plaintiff's evidence. The Court found these errors were not reversible.

125.   In *Gonzalez v. Astrue*, 2008 WL 755518 (E.D.N.Y. Mar. 20, 2008), the Commissioner agreed that ALJ Fier's determination was "based on legal error, and that [the Court] must accordingly remand the decision for further proceedings." This Court further noted, "[t]he Commissioner recognizes that the ALJ's decision [was] inconsistent, ambiguous and contains legal error" for, among other reasons, failing to follow the Treating Physician Rule.

126.   In *Rustico v. Astrue*, 2008 WL 2622926 (E.D.N.Y. July 1, 2008), this Court, in remanding another denial of benefits, said bluntly: "[i]t is evident that the ALJ improperly applied the treating physician rule." Indeed, ALJ Fier could not offer a sufficient explanation for his failure to give controlling weight to claimant's treating physician.

127.   In *Henry v. Astrue*, 2008 WL 2697317 (E.D.N.Y. July 3, 2008), this Court remanded ALJ Fier, again for failing to follow the Treating Physician Rule. Again, the Commissioner consented to the remand of this case, conceding "that the ALJ's decision was based on legal error."

128.   In *Motley v. Astrue*, 2008 WL 2755840 (S.D.N.Y. July 14, 2008), this Court found ALJ Fier's decision "arbitrary," "illogical" and "not supported by substantial evidence." The Court held that the decision should be remanded solely for the calculation of benefits.

129.   In *Hach v. Astrue*, 2010 WL 1169926 (E.D.N.Y. Mar. 23, 2010), this Court remanded ALJ Fier again for his failure to correctly assess the weight accorded to a treating physician. Although the Court found ALJ Fier did not err in refusing to give the treating physician controlling weight on disability, "the ALJ did commit legal error in failing to properly determine how much weight should be afforded." The Court concluded: "[t]he ALJ's incomplete analysis on this score constitutes proper grounds for remand." On remand, the

Court gave ALJ Fier specific instruction to conduct the appropriate analysis under the applicable regulations.

130.    In *Zubizarreta v. Astrue*, 2010 WL 2539684 (E.D.N.Y. June 16, 2010), while, as described above, this Court remanded for factual errors, as described above, the Court found that "the ALJ's most significant error" was under the Treating Physician Rule. The Court bluntly concluded: "[t]he Court is hard-pressed to find any evidence, let alone substantial evidence, that is inconsistent or contradicts" the treating physician's medical opinion on disability. The Commissioner conceded this point in consenting to a remand and reassignment to a different ALJ.

131.    ALJ Fier's clear choice to misapply and ignore standards for treating physicians continues. Less than a month ago, in *Dooknah v. Astrue*, 2011 WL 997196 (E.D.N.Y. Mar. 21, 2011), ALJ Fier's denial of benefits was again remanded because he "committed legal error by failing to give adequate (or indeed any) weight to the opinion of [claimant's] treating physician." The Court remanded solely for the calculation of benefits, finding that "the record evidence persuasively establishes that [claimant] was disabled due to chronic and ongoing back pain prior to October 9, 2009."

### (3)    Erroneous Credibility Determination

132.    In several cases, this Court found ALJ Fier in error for making adverse credibility findings against claimants, including by consistently disregarding claimants' description of the pain endured because of their disabling conditions. Below are several notable examples, demonstrating a clear pattern between 2008 and the present:

133.    In *Rustico v. Astrue*, 2008 WL 2622926 (E.D.N.Y. July 1, 2008), this Court, in remanding another denial of benefits, found error in ALJ Fier's unsupported and ambiguous decision to discredit a woman with a 22-year-work history with the same employer. "Because

the ALJ finds the claimant is not credible," the Court held, "he must set forth the reasons for that finding 'with sufficient specificity to permit intelligible plenary review of the record.'"

134.    In *Savino v. Astrue*, 2009 WL 2045397 (E.D.N.Y. July 8, 2009), this Court again determined that ALJ Fier discounted a claimant's testimony without sufficient basis.  Having already determined that ALJ Fier disregarded the Appeals Council's "explicit directives," requiring remand, the Court further noted its strong disagreement with ALJ Fier's decision to, and stated basis for, discrediting the claimant.  None of ALJ Fier's proffered explanations, according to the Court, "provides grounds for disbelieving [claimant's] testimony about his symptoms."  The Court concluded that "closer examination of the specific manner in which [claimant] has [lived his life] reveals that [his] activities highlight, rather than undermine, the severity of his limitations."  The Court thus remanded for reconsideration on this issue, directing the ALJ to give due weight to claimant's "long work history, which may be probative of credibility."

135.    In *McDowell v. Comm'r of Soc. Sec.*, 2010 WL 5026745 (E.D.N.Y. Dec. 3, 2010), this Court remanded ALJ Fier's denial of disability, in part, because of the basis on which ALJ Fier discounted claimant's testimony about the painful nature of her disability.  The Court found ALJ Fier erred in "determin[ing] that [claimant's] statements . . . were not credible in a single, conclusory pen-stroke without providing even a modicum of analysis or a token recitation of a single fact," constituting "both legal error and a lack of substantial evidence."  As noted above, the Court demanded reassignment to a new ALJ on remand.

### (4)    High Denial Rate

136.    Disposition data for 2005-2008 shows that ALJ Fier denied 55% of the claims before him, a rate 27 percentage points higher than the national average.  In fact, ALJ Fier was in the top 6% of deniers nationally for that period.

137.    More recent data confirms this stunning trend has continued, as ALJ Fier's denial

rate for the period between September 25, 2010 and February 25, 2011 (the most recent

reporting period for SSA) has in fact increased to 62.9%.

**d)    ALJ Marilyn P. Hoppenfeld**

138.    Since January 1, 2008 there are twelve district court decisions where ALJ

Hoppenfeld is identified as the author of the decision under review.  This Court found she

committed error in eleven cases.  There is little doubt, when the overall record is considered,

that ALJ Hoppenfeld's consistent errors are highly probative of her anti-claimant bias.

**(1)    Failure to Develop the Record**

139.    In several of ALJ Hoppenfeld's cases, this Court found her to be in error for

failing to develop the record.  The Court's factual findings are wholly consistent with a clear

pattern of her denial of meritorious claims based on pre-existing bias against claimants.  Below

are several notable examples, demonstrating a clear pattern between 2008 and the present:

140.    In *Tempesta v. Astrue*, 2009 WL 211362 (E.D.N.Y. Jan. 28, 2009), this Court

held that ALJ Hoppenfeld failed to fulfill her "affirmative duty to seek [claimant's] medical

records from [the treating physician]" and that there was "no indication in the record that the

ALJ attempted to comply with this duty."  The Court also found that ALJ Hoppenfeld had

"failed to affirmatively develop the record; misunderstood the nature of [claimant's] diagnosed

condition . . . [and] inexplicably gave credence to [claimant's] delusional statement . . . that he

was a successful businessman."  Moreover, ALJ Hoppenfeld suggested during the hearing "that

[claimant] had an 'unrealistic interpretation of [his] physical signs or sensation[s]' . . . and

bizarrely inquired whether [claimant] had discussed 'sexual orientation' with his psychiatrist—a

topic appearing nowhere else in the record and of no conceivable relevance."

141.     In *Pierre v. Astrue*, 2010 WL 92921 (E.D.N.Y. Jan. 6, 2010), this Court held that ALJ Hoppenfeld failed to develop the record where the medical records of a treating physician who had seen claimant for three years were "entirely absent from the record." This was after two hearings by ALJ Cofresi, two remands by the Appeals Council, and a hearing by ALJ Hoppenfeld (which also led to a remand), all of which spanned over ten years.

142.     In *Brown v. Astrue*, 2010 WL 2195568 (E.D.N.Y. May 28, 2010), this Court held, again, that ALJ Hoppenfeld "failed to adequately develop the record" where "the administrative transcript contained virtually no records from [the treating physician]" who stated that he had treated claimant on a monthly basis for at least two years. In fact, the Court noted that there was "no indication that the ALJ made any effort to obtain [claimant's] complete medical file from [the treating physician]," in violation of her affirmative duty.

143.     In *Tiborsky v. Astrue*, 2010 WL 2730791 (E.D.N.Y. July 8, 2010), this Court found, yet again, that ALJ Hoppenfeld failed to fulfill her affirmative duty to develop the record and ordered remand to the Commissioner for further proceedings..

144.     In *Maline v. Astrue*, 2010 WL 4258259 (E.D.N.Y. Oct. 21, 2010), ALJ Hoppenfeld denied benefits to an electrician of 20 years who became disabled after falling from a ladder, severely injuring his hip and back. This Court held, among other errors, that ALJ Hoppenfeld failed to develop the record when she failed to contact "[the treating physicians] for clarification" before finding that the "treating physicians' statements were not supported by adequate evidence in the record." The Court remanded the case with explicit instruction to "further develop the evidence."

### (2)     Failure to Follow the Law

145.     In all eleven of ALJ Hoppenfeld's remanded cases, this Court found her to be in error for failing to follow the law, including by repeatedly ignoring the Treating Physician Rule.

Below are several notable examples, demonstrating a clear pattern between 2008 and the

present:

146.     In *Schnetzler v. Astrue*, 533 F. Supp. 2d 272 (E.D.N.Y. 2008), this Court held

that ALJ Hoppenfeld "failed to even acknowledge the treating physician rule." The Court found

that ALJ Hoppenfeld "failed to adequately explain what good reasons she had in discounting the

opinions of [claimant's] treating physicians," and that her "total silence on the weight accorded"

various treating physicians "was error." These errors persisted even after three hearings before

various ALJs. In addition, the Court noted that there was "no indication in the record that the

ALJ considered any [statutory] factors when viewing the opinions of [claimant's] treating

physicians." The Court also held that ALJ Hoppenfeld "improperly substituted her opinion for

the observations of [claimant's] physicians, and the opinion of the medical expert."

147.     In *Kearney v. Astrue*, 2008 WL 2705525 (E.D.N.Y. July 11, 2008), this Court

criticized ALJ Hoppenfeld for her "baffling failure to apply the treating-physician rule" after it

had remanded this very case in 2006 with explicit instructions to reconsider the claim "in

accordance with the treating-physician rule." Instead of following the order on remand, "ALJ

Hoppenfeld, for reasons defying comprehension, chose to repeat the same error that caused [the

judge] to remand the case to the Commissioner." Indeed, ALJ Hoppenfeld acknowledged "on

the record at the supplemental hearing, that the purpose of the remand was to consider the

opinion of [claimant's] treating doctors." Judge Gleeson punctuated his decision by noting

"that ALJ Hoppenfeld has apparently held her current position since at least 1985 . . . I do not

see how ALJ Hoppenfeld could have failed to understand my order, and am at a loss as to why

she failed to comply with it." The Court further noted the claimant's "nine-year quest for

disability insurance benefits" and was so concerned with ALJ Hoppenfeld that the Court

remanded the case for a calculation of benefits only and directed the Commissioner to assign the case to a different ALJ upon remand.

148.    In *Silva v. Astrue*, 2008 WL 4911767 (E.D.N.Y. Nov. 14, 2008), this Court found, again, that ALJ Hoppenfeld misapplied the Treating Physician Rule in her "flawed" analysis, in which she "minimized the significance of [the treating physician's] findings and mischaracterized them." The court punctuated this finding by describing other errors, including her decision to "largely dismiss[]" key evidence, analysis that was "simply wrong," and conclusions that amounted to a "substitution . . . of her own judgment" for the treating physician's. The Court held that "further administrative proceedings in this case would serve no purpose . . . [and remanded the case solely] for the purpose of calculating benefits." The Court noted that this disposition was "'particularly appropriate' in light of the fact that [claimant's] application has been pending since February 16, 2000."

149.    In *Tempesta v. Astrue*, 2009 WL 211362 (E.D.N.Y. Jan. 28, 2009), this Court found ALJ Hoppenfeld "misapplied the treating physician rule by discounting [the treating physician's] opinions for improper reasons," such as lack of objective findings and conflicts with a state examiner. Moreover, the Court found that ALJ Hoppenfeld's assessment of the claimant's physical abilities was "plucked from thin air." Ultimately, the Court held that, contrary to ALJ Hoppenfeld's findings, "the treating physician rule compels a finding of disability as to that period, [and ordered] an immediate calculation of benefits."

150.    In *Pierre v. Astrue*, 2010 WL 92921 (E.D.N.Y. Jan. 6, 2010), this Court held, once again, that ALJ Hoppenfeld failed to apply the Treating Physician Rule. Additionally, the Court found that ALJ Hoppenfeld "utterly failed to perform the required task of determining

what weight" the treating physicians' opinions deserved and that this "constitute[d] an

independent legal error warranting remand."

151.    In *Brown v. Astrue*, 2010 WL 2195568 (E.D.N.Y. May 28, 2010), this Court held

that ALJ Hoppenfeld erred in not giving the treating physician's opinion controlling weight

because it "is supported by the medical record . . . [and] the ALJ failed to provide sufficient

reasons for disregarding [the treating physician's] opinion." Indeed, the Court noted that ALJ

Hoppenfeld "did not even mention . . . much less make any effort to apply" the statutory factors

for determining the weight of medical opinions as required by regulation.

152.    In *Tiborsky v. Astrue*, 2010 WL 2730791 (E.D.N.Y. July 8, 2010), this Court

held that ALJ Hoppenfeld "not only failed to give good reasons for disregarding [the treating

physician's] opinion, but arbitrarily substituted her views for those of the medical professionals

who had examined [claimant]" and "trivialized [claimant's] impairments by characterizing them

as 'low back pain, cervical neck pain and bilateral knee sprain.'" The Court noted that ALJ

Hoppenfeld "chose to rely on her own expertise," rather than on medical experts, in determining

claimant's residual functional capacity.

153.    In *Lopez v. Astrue*, 2010 WL 4054116 (E.D.N.Y. Oct. 8, 2010), this Court once

again noted ALJ Hoppenfeld's "abject failure" to properly apply the Treating Physician Rule,

despite being told on remand from the Appeals Council to "give further consideration to the

medical expert opinion." In particular, the Court pointed out that "the ALJ failed to give

reasons why she did or did not consider *five* MRIs supportive of [claimant's] severe lower back

pain and [the treating physician's] determinations." Incredulously, the Court also noted that

ALJ Hoppenfeld discounted the opinion of the treating physician who had "provided [a]

consistent opinion during his six-year treating relationship . . . [where he saw claimant] every

two-to-four months" in favor of the opinion of the state physician who met with claimant on one single occasion.

154.    In *Maline v. Astrue*, 2010 WL 4258259 (E.D.N.Y. Oct. 21, 2010), this Court found, for the tenth time in three years, that ALJ Hoppenfeld failed to apply the Treating Physician Rule.  The Court held that ALJ Hoppenfeld improperly discredited the treating physicians' opinions, because among other reasons, "[the opinion] appeared on a 'check-off-the-box "form" assessment.'"

155.    In *Mitchell v. Astrue*, 2010 WL 5437207 (E.D.N.Y. Dec. 23, 2010), the Commissioner conceded that ALJ Hoppenfeld "committed legal error by failing to properly consider the medical opinions of two physicians: . . . the ALJ discounted the opinion of [one doctor] as a non-treating source, despite the fact that the doctor testified he had seen [claimant] every few months . . . [and] [t]he ALJ did not even address [another treating physician's] medical opinion at all."

(3)    **Erroneous Credibility Determinations**

156.    In several cases, this Court found ALJ Hoppenfeld in error for making adverse credibility findings against claimants, which included consistently disregarding claimants' description of the pain endured because of their disabling conditions.  Below are several notable examples, demonstrating a clear pattern between 2008 and the present:

157.    In *Brown v. Astrue*, 2010 WL 2195568 (E.D.N.Y. May 28, 2010), this Court held that ALJ Hoppenfeld "erred in discounting [claimant's] subjective claims of pain."  The Court found that ALJ Hoppenfeld "incorrectly implied" there were no positive neurological findings where the record contained such findings and that "even if there had been no positive neurological findings . . . there was still ample evidence to support [claimant's] subjective claims of pain."

158.    In *Tiborsky v. Astrue*, 2010 WL 2730791 (E.D.N.Y. July 8, 2010), this Court held that ALJ Hoppenfeld "not only disregarded the doctor's medical opinions, but disregarded portions of the record and [claimant's] testimony in evaluating [claimant's] claims of pain." The Court found, "the ALJ *selectively* mentioned only the evidence supporting her contention that plaintiff's 'activities [were] consistent with light work,' while *ignoring* all evidence to the contrary." In fact, the Court noted that there was "no indication that the ALJ made any serious attempts to evaluate other relevant factors" that are enumerated in the regulations.

159.    In *Lopez v. Astrue*, 2010 WL 4054116 (E.D.N.Y. Oct. 8, 2010), this Court found ALJ Hoppenfeld's "reasons for not crediting [claimant's] allegations of pain were largely inaccurate" and that ALJ Hoppenfeld had "misrepresented [claimant's] testimony." Indeed, the Court noted ALJ Hoppenfeld "inexplicably" gave "purported reasons for discrediting [claimant's] testimony, but did not explain why she rejected [claimant's] testimony."

160.    In *Maline v. Astrue*, 2010 WL 4258259 (E.D.N.Y. Oct. 21, 2010), this Court held, yet again, that "ALJ Hoppenfeld erred in concluding that [claimant] was not credible without discussing in form or in substance the factors governing credibility determinations." The court remanded this case with explicit instruction to apply the statutory credibility factors.

### (4)    **High Denial Rate**

161.    Disposition data for 2005-2008 shows that ALJ Hoppenfeld denied 39% of the claims before her, a rate 11 percentage points higher than the national average. In fact, ALJ Hoppenfeld was in the top 23% of deniers nationally for that period.

162.    More recent data confirms this stunning trend has continued, as ALJ Hoppenfeld's denial rate for the period between September 25, 2010 and February 25, 2011 (the most recent reporting period for SSA) in fact increased to 48.3%.

e)   **ALJ Hazel C. Strauss**

163.   Since January 1, 2008, sixteen district court cases identified ALJ Strauss as the author of the decision under review.  This Court found she committed error in thirteen of these cases.  There is little doubt, when the overall record is considered, that ALJ Strauss's consistent errors are highly probative of her anti-claimant bias.

(1)   **Failure to Develop the Record**

164.   In several of ALJ Strauss's cases, this Court found her to be in error for failing to develop the record.  The Court's factual findings are wholly consistent with a clear pattern of her denial of meritorious claims based on pre-existing bias against claimants.  Below are several notable examples, demonstrating a clear pattern between 2008 and the present:

165.   In *Harris v. Astrue*, 2008 WL 5517087 (E.D.N.Y. Jan. 20, 2008), ALJ Strauss denied benefits to a *pro se* claimant who suffered from a "severe" panic disorder and depression.  In so doing, ALJ Strauss failed to adequately develop the record because she gave "significant weight" to a non-treating and non-examining consultant but "failed to seek an opinion as to [claimant's] disability from her treating physician."  Thus, "the record was improperly developed and [claimant] did not receive 'a fair and adequate hearing before the [Commissioner].'"  The Court noted that ALJ Strauss's failures "clash[ed] with the 'essentially non-adversarial nature of a benefits proceeding.'"

166.   In *Bommarito v. Astrue*, 2008 WL 5085093 (E.D.N.Y. Dec. 2, 2008), the Appeals Council gave ALJ Strauss explicit instructions "as to specific methods of developing the record" because the case had already been remanded twice due to legal errors.  In direct violation of these instructions, ALJ Strauss again did not properly develop the record by failing to "recontact the claimant's treating physicians" after marginalizing their opinions at the first hearing.  This Court remanded the case for an expedited hearing—repeating the explicit

instructions already given by the Appeals Council—because "the ALJ has failed to properly develop the record in her consideration of the treating source rule."

167.    In *Robinson v. Astrue*, 2009 WL 4722256 (E.D.N.Y. Dec. 9, 2009), ALJ Strauss committed no less than "four errors warranting remand" when she denied benefits to the claimant.  Among those errors, ALJ Strauss failed to properly develop the record when she unilaterally determined that claimant's depression was not severe "without input from any professional."  She did so, despite the existence of "considerable evidence" to the contrary, which should have prompted ALJ Strauss to pursue additional information.

168.    In *Martinez v. Astrue*, 2010 WL 5126224 (E.D.N.Y. Dec. 9, 2010), this Court remanded the case back to ALJ Strauss for additional development of the record after determining that she "failed to carry out her obligation to adequately develop the administrative record" when she declined to seek clarification about the claimant's condition from the claimant's treating physician, who had provided "ongoing treatment" to claimant "that began more than a year before the end of the relevant time period."

169.    In *Patel v. Astrue*, 2010 WL 5125986 (E.D.N.Y. Dec. 10, 2010), which this Court characterized as "a 12-year-long series of denials and remands," ALJ Strauss "failed to fulfill [her] duty" to fully develop the record because she rejected "out of hand" the opinions of a doctor whom she merely assumed had not treated the claimant during the period at issue.  The Court described ALJ Strauss's reason for rejecting the opinions as "insufficient" and a "*non sequitur*."  Regarding ALJ Strauss's conclusion that the doctor's opinion deserved no weight because it did not relate to the relevant time period, the Court simply stated "[t]hat was wrong."  The Court remanded the case and directed ALJ Strauss to properly develop the record with regard to this physician.

## (2)  Failure to Follow the Law

170.    In several of ALJ Strauss's cases, this Court found her to be in error for failing to
follow the law, including by repeatedly ignoring the Treating Physician Rule.  Below are
several notable examples, demonstrating a clear pattern between 2008 and the present:

171.    In *Canton v. Astrue*, 2010 WL 5391184 (E.D.N.Y. Dec. 22, 2010), this Court
rejected ALJ Strauss's findings because she "fail[ed] to consider even a single medical opinion
[authored by the treating physician] – irrespective of the substantial weight of controverting
evidence or a medical opinion's legibility – [which] constitutes reversible error."

172.    In *Scandura v. Astrue*, 2009 WL 648611 (E.D.N.Y. Mar. 10, 2009), ALJ Strauss
accorded little weight to a veritable battery of treating physicians, relying instead on the
opinions of two SSA doctors, one of whom had never examined the claimant and relied on
evidence that "seem[ed] to appear out of thin air."  This Court found that ALJ Strauss "too
readily dismissed" the opinions of three treating physicians while "ignoring completely" the
opinions of others.  The Court described ALJ Stauss's reasons for dismissing the opinions of the
claimant's treating physicians as "questionable" and "unreasonable."

173.    In *Primiani v. Astrue*, 2010 WL 474642 (E.D.N.Y. Feb. 5, 2010), ALJ Strauss
denied benefits to a claimant who had worked for twenty-seven years as a secretary before
being hit by a truck as a pedestrian.  In the process, ALJ Strauss decided that the claimant's
treating physicians' opinions were "not entitled to controlling weight or even significant
weight."  That is, except for a single cherry-picked statement by the claimant's longtime
rheumatologist—which was only entered into evidence as hearsay by a state agency medical
consultant—that the claimant had some basic movement left in her hands.  "Inexplicably," this
Court noted, ALJ Strauss gave significant weight to this secondhand statement "even as she
virtually disregarded [the treating physician's] own firsthand assessments."  The Court saw no

reason to remand for a determination of disability because ALJ Strauss "lacked good reasons for refusing to give controlling weight to [the treating physician's] assessment of [the claimant's] ability to work." Instead, "rather than subject [the claimant] once again to the painfully slow process by which disability determinations are made, the case [was] remanded solely for the calculation of benefits."

174. In *LoRusso v. Astrue*, 2010 WL 1292300 (E.D.N.Y. Mar. 31, 2010), ALJ Strauss again refused to give significant weight to the claimant's treating physician. Instead she favored the opinions of two consulting physicians who had only examined the plaintiff one time each over a year before the claimant underwent subsequent surgeries that confirmed her treating physician's diagnosis. This Court stated that it was "puzzled" and "surprised (to say the least) that ALJ Strauss continued to assign any weight, let alone significant weight, to [the consulting physicians'] opinions." The Court found ALJ Strauss's failure to explain the lack of weight given to the plaintiff's treating physicians "particularly troubling" because explicit instructions to do so had been given on a previous remand. These repeated failures to follow instructions on remand "frustrated the entire point of the remand" and "rendered remand unproductive." In sum, "ALJ Strauss misapplied several legal standards" and "her finding as to [the claimant's] residual capacity function [was] not supported by substantial evidence." The Court noted that "it is regrettable . . . that this matter must be returned to the Commissioner for a third review." However, the record was too incomplete for the Court to rule that the claimant was disabled. Accordingly, the Court again issued explicit instructions about how to properly weigh the opinions of a treating physician and remanded the case. Because it had been nearly nine years since the claimant had filed her initial application, the Court urged the Commissioner "to reach a decision on her claim expeditiously."

175.    In *Martinez v. Astrue*, 2010 WL 5126224 (E.D.N.Y. Dec. 9, 2010), this Court

criticized ALJ Strauss for making a "determination [that] is neither supported by substantial

evidence nor based upon the correct legal standards." ALJ Strauss's opinion was "not based

upon a medical assessment of plaintiff's physical limitations. Instead, the ALJ based her

determination on her own evaluation of the medical findings in the record, committing legal

error." For example, ALJ Strauss asserted that there was no evidence that the claimant suffered

spasms or a decreased range of motion due to her back problems, an assertion directly

"contradicted by the record." Indeed, ALJ Strauss completely disregarded any evidence of

claimant's back pain and, incredibly, ruled that the claimant could perform any of her previous

jobs. The Court remanded the case and ordered an expedited hearing.

176.    In *Patel v. Astrue*, 2010 WL 5125986 (E.D.N.Y. Dec. 10, 2010), ALJ Strauss

again failed to comply with the Treating Physician Rule. The Court stated that ALJ Strauss had

wrongly discounted the opinion of the claimant's treating physician of fourteen years in a

"cursory way" although the physician "emphatically and consistently" maintained that claimant

was fully disabled. The court noted that "[t]he ALJ explained away as 'uncorroborated by

objective testing' a handful of diagnoses (including one in which there was an MRI) and

ignored the rest." It further stated that "ALJ Strauss should have discussed, or at least

acknowledged" the occasions on which the claimant's doctor had diagnosed her. Because ALJ

Strauss "nowhere interact[ed] substantively with [the treating physician's findings]" the court

remanded the case holding that ALJ Strauss's decision was "fatally flawed."

177.    In *Pluck v. Astrue*, 2011 WL 917654 (E.D.N.Y. Mar. 9, 2011), after more than

six years and multiple hearings and remands, ALJ Strauss denied the claimant benefits. The

claimant appealed to the district court which once again remanded due to legal errors. This

Court noted that ALJ Strauss had misapplied the Treating Physician Rule by disregarding the testimony of two doctors who had seen the claimant on dozens of occasions. In typical fashion, she instead favored a consulting doctor who testified as an expert at the hearing. The Court noted that the consulting doctor "did not provide any reasoning to support his conclusions, but the ALJ nonetheless adopted them at face value." Moreover, ALJ Strauss adopted them despite "so many observations in the records of [the claimant's] treating physicians, which went unexplained or unacknowledged in her decision." In essence, ALJ Strauss had "incorrectly sifted through [the] evidence and referenced only those items that contradicted [the claimant's] account." This "selective reading of the evidence was improper." In disregarding evidence that supported the claimant's treating physicians, ALJ Strauss "disregarded her obligations to make 'every reasonable effort' to understand the bases of [the treating physician's] opinion." Moreover, she "insufficiently explained" her disregard of the treating physicians' opinions. Instead, ALJ Strauss simply "ignore[ed]" the "observations that did not square with her conclusions."

### (3)    Erroneous Credibility Determinations

178.    In several cases, this Court found ALJ Strauss in error for making adverse credibility findings against claimants, including by consistently disregarding claimants' descriptions of the pain endured because of their disabling conditions. Below are several notable examples, demonstrating a clear pattern between 2008 and the present:

179.    In *Harris v. Astrue*, 2008 WL 5517087 (E.D.N.Y. Jan. 20, 2008), this Court ordered ALJ Strauss to "revisit [her] adverse credibility determination with closer attention to the record." The Court specifically noted that ALJ Strauss characterized the claimant as able to cook food and visit friends despite the claimant's testimony that she "really 'no longer cook[s]'" and that she only went out once a month with her significant other and otherwise had no friends.

The Court stated that ALJ Strauss had the duty to engage in a "meticulous review of the testimony and record," but "[t]here is reason to believe that such a review was lacking here."

180.    In *Scandura v. Astrue*, 2009 WL 648611 (E.D.N.Y. Mar. 10, 2009), ALJ Strauss had twice denied benefits to a claimant who had testified that she was "racked with pain throughout [her] body" and whose treating physician rated her "constant" pain level "at a 10 on a 10-point scale." This Court criticized ALJ Strauss's credibility determination as "an attempt by the ALJ to substitute her own judgment for that of [the treating physicians]." Not only did ALJ Strauss "set[] the bar too high" by requiring the claimant to "peg her subjective complaints to objective evidence," but she created a "Catch-22 situation" in which the "plaintiff would have virtually no *objective* way to demonstrate the veracity of her own subjective complaints."

181.    In *Wilkins v. Astrue*, 2009 WL 1262380 (E.D.N.Y. May 8, 2009), this Court remanded the case because ALJ Strauss "improperly disregarded [the claimant's] complaints of severe pain." ALJ Strauss had relied on apparent contradictions in the claimant's testimony to attack her credibility. However, upon reviewing the record, the Court found "no reason to doubt [the claimant's] credibility."

182.    In *Primiani v. Astrue*, 2010 WL 474642 (E.D.N.Y. Feb. 5, 2010) ALJ Strauss assumed that the claimant must have testified falsely about her pain because she drove her daughter to school, cooked, and cleaned. This Court disagreed, stating that "[t]hese functions are life's necessities, and [the claimant] a single mother, has no one else to do them for her. That she manages to accomplish them (with the help of 200 pills per month) does not make it likely that she lied about the pain she endures." ALJ Strauss further erred by finding claimant's testimony not credible despite evidence that "strongly suggest[ed] a determination to work for

as long as [the claimant] could." In light of these egregious errors, the Court remanded solely for the calculation of benefits.

183.    In *LoRusso v. Astrue*, 2010 WL 1292300 (E.D.N.Y. Mar. 31, 2010), ALJ Strauss ignored explicit instructions from a previous remand by failing to consider several surgeries when determining that claimant's complaints of pain were not credible. In fact, ALJ Strauss failed to provide any reason for finding that the claimant lacked credibility which "'fatally undermine[d] [her] argument that there is substantial evidence adequate to support h[er] conclusion that claimant is not under a disability'" and therefore warranted remand.

184.    In *Pena v. Comm'r of Soc. Sec.*, 2010 WL 4340449 (E.D.N.Y. Oct. 22, 2010), ALJ Strauss once again committed "legal error" when she failed to "properly evaluate [claimant's] subjective testimony concerning her disability." Specifically, she ignored the claimant's medication regime, non-pharmaceutical treatments, and other factors the claimant testified to concerning the severity of her condition.

185.    In *Canton v. Astrue*, 2010 WL 5391184 (E.D.N.Y. Dec. 22, 2010), this Court remanded because ALJ Strauss improperly analyzed claimant's credibility by failing to "take into account any precipitating and aggravating factors, such as [the claimant's] diabetes" when analyzing the claimant's subjective complaints of pain.

186.    In *Pluck v. Astrue*, 2011 WL 917654 (E.D.N.Y. Mar. 9, 2011), ALJ Strauss "erred in using isolated events" to discredit the claimant's account of her limitations. For example, ALJ Strauss relied on evidence that the claimant had made several attempts to return to work as an indication that the claimant was not disabled at all during the thirteen year period of claimed disability. The Court noted that these were best characterized as "unsuccessful work

attempt[s]" that did not prove the claimant was not disabled.  ALJ Strauss had "effectively penalized [the claimant] for returning to work when she was able."

### (4)    High Denial Rate

187.    Disposition data for 2005-2008 shows that ALJ Strauss denied 69% of the claims before her, a rate 41 percentage points higher than the national average.  In fact, ALJ Strauss was in the top 2% of deniers nationally for that period.

188.    More recent data confirms this stunning trend has continued, as ALJ Strauss's denial rate for the period between September 25, 2010 and February 25, 2011 (the most recent reporting period for SSA) has bloated to an alarming rate of 81%.

### 2.    Commissioner's Indifference

189.    The Commissioner is aware or should have been aware, based on statistics, complaints, and errors presented on appeal, that the Named ALJs are biased against people with disabilities and claimants generally.

190.    The Commissioner is also aware or should have been aware, based on statistics, complaints, and errors presented on appeal, that the Named ALJs routinely refuse to apply Social Security law and regulations in rendering their decisions.

191.    The Commissioner has failed to take adequate steps to prevent the Named ALJs from failing to provide fair hearings, or from rendering decisions based on bias.

192.    Despite this long history of mistreatment and bias, the Commissioner failed to take any meaningful action to correct the improper and illegal behavior of the ALJs in the QODAR.  Without action by the Commissioner, these administrative law judges have no accountability to the public because only agencies are allowed to take action against administrative law judges for good cause established and determined by the Merit Systems Protection Board after a hearing pursuant to 5 U.S.C. § 7521.

193.    Indeed, it was only on February 23, 2010 that the Commissioner issued public notice of intent to establish a new system of records and routine uses entitled "Administrative Law Judge/Public Alleged Misconduct Complaints System" to manage and monitor complaints. In his announcement, the Commissioner acknowledged, "[a]t present, we do not have a good mechanism to track complaints about ALJs from initiation to resolution."

### 3.    Lack of Accountability to the Public

194.    Absent the Court's intervention, the Named ALJs have no direct accountability to the public.  Pursuant to 5 U.S.C. § 7521, only agencies are allowed to take action against ALJs for good cause established and determined by the Merit Systems Protection Board after a hearing, and, upon information and belief, the Commissioner has not taken any action against any of the Named ALJs.

195.    Additionally, pursuant to the SSA's Office of Hearings and Appeals (Now ODAR), *Hearings, Appeals and Litigation Law Manual,* at I-2-0-5.A (updated, Sept. 28, 2005), it is the responsibility of the Hearing Office Chief ALJ to "participate[] in investigations, in coordination with the Regional Chief Administrative Law Judge, into allegations of misconduct on the part of any employee, including ALJs . . . [and to] ensure[] the timely and accurate response to public and congressional inquiries; . . . and conduct[] periodic training." Accordingly, under the current paradigm for investigation of wrongdoing, one of the primary offenders—ALJ Nisnewitz—would be responsible for participating in investigations into the very misconduct of which he is accused.

196.    Without the intervention of this Court, there is no practical means for the public generally, and the plaintiffs and class members particularly, to hold the Named ALJs accountable for their actions and to obtain the necessary relief from unfair hearings and decisions based on bias.

4.     **Bias Toward Class Plaintiffs Specifically**

197.     As detailed below, each of the Class Plaintiffs has experienced one or more of the very errors which this Court has had to correct time, after time, after time with the Named ALJs.  Most commonly, Class Plaintiffs have experienced the Named ALJs' clear and systematic failure to abide by the Treating Physician Rule.  Many have also suffered from the Named ALJs' dereliction of duty to develop the record and support their conclusions with cogent explanation and evidence.  Many have suffered erroneous adverse credibility determinations.  Some have suffered from more obvious bias, hostility and unprofessional behavior (which is indicative of bias).  There is little doubt, when the overall record is considered, that Class Plaintiffs have experienced the same pattern of bias identified above.

a)     **Plaintiff Lorraine Padro**

198.     Ms. Padro's case was heard by ALJ Hoppenfeld.  ALJ Hoppenfeld's decision denying benefits to Ms. Padro was premised on several errors, including failure to abide by the Treating Physician Rule, failure to develop the record, erroneous and faulty credibility determinations, and failure to support conclusions with substantial evidence.

199.     **Background Facts**: Ms. Padro, born January 12, 1969, is a 42-year-old woman who lives with a family friend in a basement in Ozone Park, New York.  She has been unable to work since July 15, 2006, and has not engaged in substantial gainful activity since at least that date.  She receives public assistance.  Ms. Padro has a sixth-grade education, and her subsequent attempts to obtain a high school equivalency diploma were unsuccessful.  Ms. Padro has limited ability to read and write and can only perform addition.  Her work history has included positions as a cleaner for a fast food restaurant and as a clerical worker.

200.     **Disabilities**: Ms. Padro suffers from several disabling conditions, including diabetes (and associated obesity), asthma, major depressive disorder with psychotic and anxious

features, bipolar disorder, chronic low back pain, migraine headaches, and radiculopathy.  Her

benefits application focused on her well-documented and severe mental illness, which, in the

words of one of her treating physicians made her "unemployable."  Indeed, after trying to place

her in a number of positions, the New York City Human Resources Administration ("HRA")

exempted Ms. Padro from participating in its work programs because of her physical and

psychiatric conditions.

201.   **Procedural History**:  On July 24, 2009, Ms. Padro appealed the denial of

benefits.  ALJ Hoppenfeld held a hearing and determined that Ms. Padro was not disabled.  The

Appeals Council denied Ms. Padro's request for review, and, on July 23, 2010, she appealed the

denial in the U.S. District Court for the Eastern District of New York.  Only then, *the

Commissioner conceded error by ALJ Hoppenfeld*, and urged remand rather than a court-

directed award of benefits.  This amended complaint incorporates by reference, and requests the

same relief requested, in the original complaint as to Ms. Padro.

202.   **Errors**:  ALJ Hoppenfeld's decision was premised on the following errors:

a.   **Treating Physician Rule**:  As conceded by the Commissioner upon

appeal to this court, ALJ Hoppenfeld ignored the requirements of the

Treating Physician Rule.

b.   **Failure to develop the record**:  ALJ Hoppenfeld discounted the treating

physician, in part, because of an absence of treatment records.  However,

ALJ Hoppenfeld did not request such records, as was her obligation, and

ignored the records actually submitted.

c.   **Failure to support conclusion with substantial evidence**:  ALJ

Hoppenfeld based her central conclusion—that Ms. Padro could

performed low-stress, nonrepetitive, and unsupervised work, which did not bring her into close proximity with others—on a highly leading and hypothetical series of questions to the Commissioner's own vocational expert ("VE"). In relying on the VE's testimony that a hypothetical person with Ms. Padro's limitations could perform such work, ALJ Hoppenfeld failed to consider, or even address, HRA's determination that Ms. Padro's mental illness made her unsuitable for employment.

d.   **Erroneous credibility determination**:  ALJ Hoppenfeld noted, in assessing Ms. Padro's testimony, the "many inconsistencies in this record, which makes claimant's allegations suspect, questionable and unable to be accepted." However, ALJ Hoppenfeld failed to address, or even mention, the severe mental illness that gave rise to some of the inconsistencies upon which she focused as a basis to discredit Ms. Padro.

e.   **Other errors**:  In various ways, it is clear that, in rendering her decision, ALJ Hoppenfeld was distracted by Ms. Padro's history of child custody proceedings and prior drug dependency.  She also often substituted her own medical opinion for that of the doctor, often to absurd conclusions, such as by suggesting, while receiving testimony about a diabetes-related foot injury, that the injury was brought on by drug use.

203.   Thus, it is quite clear that Ms. Padro suffered the same exact errors and misconduct that this Court, time and time again, has been called upon to correct.  Absent action from this Court, Ms. Padro will be subjected to continuing bias from ALJ Hoppenfeld's errors and behavior.

204.   In the meantime, the denial of SSI benefits is causing Ms. Padro to endure severe deprivation and hardship.  Since her mother's death, Ms. Padro has lived with a friend of the family and looks to public assistance as her sole income.  Ms. Padro's psychotherapist found that her lack of income has an adverse effect on her emotional stability and has intensified her symptoms of depression.  It has been four years since Ms. Padro filed her claim for SSI, and each day of delay brings her closer to total destitution and harm to her health.

### b)   Plaintiff Dhanasar Raman

205.   Mr. Raman's case was heard by ALJ Strauss.  ALJ Strauss's decision denying benefits to Mr. Raman was premised on several errors, including failure to abide by the Treating Physician Rule, failure to develop the record, erroneous credibility determinations, and failure to support conclusions with substantial evidence.

206.   **Background Facts:**  Dhanasar Raman, born July 4, 1960, is a 50-year-old resident of South Ozone Park, New York.  Mr. Raman attended school up through the 5th grade in his native Guyana, and previously worked as a machinist.

207.   **Disabilities:**  Dhanasar Raman suffers from cervical dystonia, a painful disorder of involuntary muscle contractions causing sustained twisting movements and abnormal posture.  Both Mr. Raman's neck and upper torso are severely twisted to the right.  This twisting affects his posture in that his upper lumbar spine tilts to the left.  His right shoulder is positioned higher than his left shoulder and Mr. Raman is neither able to rotate his spine to the left nor bend to the left.  Mr. Raman also suffers herniated discs in his cervical spine due to his condition.

208.   **Procedural History:**  On December 5, 2007, Mr. Raman applied for SSI and SSD benefits.  His initial application was denied on June 6, 2006.  Mr. Raman appealed the denial of benefits, and a hearing was held before ALJ Strauss.  On February 25, 2010, ALJ

Strauss denied disability benefits to Mr. Raman.  On May 3, 2010, Mr. Raman requested that the Appeals Council review ALJ Strauss's decision, but to date he has not received a decision on this request.

209.   **Errors:**  ALJ Strauss' decision was premised on the following errors:

a.   **Treating Physician Rule:**  ALJ Strauss discounted the report of Mr. Raman's treating physician because it allegedly lacked clinical findings and relied on subjective complaints of neck pain.  This determination contained serious legal and factual errors as it failed to give the doctor's diagnosis and prognosis controlling weight, despite the report being consistent with the evidence in the record and "well-supported by medically acceptable clinical and laboratory diagnostic techniques." Indeed, the treating physician's report was based, in part, on two MRI scans and an EEG, as well as a physical examination of Mr. Raman.  ALJ Strauss also discounted a second medical report proffered by a treating physician.  In that instance, ALJ Strauss offered opaque and inconsistent grounds for her dismissal of the report.  ALJ Strauss also ignored medical evidence from an MRI, dated June 6, 2005, which revealed herniated discs in the area of the cervical spine.

b.   **Failure to develop the record:**  ALJ Strauss failed to develop the record through the use of expert medical testimony before determining that Mr. Raman's impairments from cervical dystonia do not constitute an impairment in the SSA's Listing.  Instead, ALJ Strauss conducted her own evaluation of the medical record, which overlooked almost all of the

medical findings by Mr. Raman's treating physicians and ignored the serious effects of his condition which include: permanent involuntary movement, interference with his ability to perform normal motor functions, hampered locomotion and limited use of his hands.

c.    **Failure to support conclusion with substantial evidence:**  ALJ Strauss also erred as a matter of law by finding that Mr. Raman could perform light work.  Light work is defined as the ability to stand for at least 6 hours out of an 8 hour work day and to lift up to 20 pounds.  ALJ Strauss failed to consider the impact of Mr. Raman's dystonia, which affects Mr. Raman's gait and balance and causes his head to remain in the same right-facing position.  In addition, ALJ Strauss failed to account for the difficulty anyone would encounter in using both hands while their head is chronically turned.  This condition impacted Mr. Raman's ability to navigate the ordinary hazards of a typical working environment.

d.    **Erroneous credibility determination**:  In rejecting Mr. Raman's request for benefits, ALJ Strauss questioned his credibility.  This decision was clear error—particularly in light of Mr. Raman's strong 20-year work record, which under well-settled law entitles him to a presumption of credibility.  Not surprisingly, ALJ Strauss's credibility determination is belied by the nature of Mr. Raman's complaints, which are consistent with a diagnosis of cervical dystonia.  Nonetheless, in an effort to support her own flawed conclusion, ALJ Strauss questioned Mr. Raman's credibility because he failed to seek out physical therapy, a "work

hardening program," chiropractic treatment, or narcotic pain medication—none of which were recommended by Mr. Raman's treating physicians.

      c)    **Plaintiff Toby Marlow as Court-Appointed Guardian for Judith Blumensohn**

210.    Ms. Blumensohn's case was heard by ALJ Nisnewitz. In denying benefits to Ms. Blumensohn, ALJ Nisnewitz failed to properly apply well-settled Social Security law.

211.    **Background Facts:** Judith Blumensohn, born July 19, 1955, is a 55-year-old woman who for the past year has been an in-patient at the Zucker Hillside Hospital, a psychiatric hospital in Queens, New York. She has no past relevant work experience and has never engaged in substantial gainful activity. Since 2002, Ms. Blumensohn has received SSI disability benefits.

212.    **Disabilities:** The Commissioner concedes that, since 2002, Ms. Blumensohn has suffered from the severe mental impairment of schizophrenia. At issue during Ms. Blumensohn's hearing was whether Ms. Blumensohn's impairment began prior to her 22nd birthday.

213.    **Procedural History:** On October 23, 2006, Ms. Blumensohn filed an application for DAC benefits, SSD benefits that are available under the Act to an unmarried child over the age of 18 with a disability that began before age 22, based on a parent's Social Security earnings record. In her application, Ms. Blumensohn alleged severe mental illness that began when she was 12 years old—the age at which the Family Court of Kings County found her to be a "person in need of supervision." Ms. Blumensohn's application for benefits was denied. Ms. Blumensohn appealed the denial of benefits, and a hearing was held on June 23, 2008 before ALJ Nisnewitz. On February 10, 2009, ALJ Nisnewitz rejected Ms. Blumensohn's

contention that she was disabled prior to her 22nd birthday.  On June 15, 2010, the Appeals

Council remanded Ms. Blumensohn's case.  The Appeals Council concluded that Ms.

Blumensohn's impairment was "severe" prior to her 22nd birthday and that Social Security

Ruling 83-20 allows for inferences of a mental illness onset date.  Accordingly, the Appeals

Council instructed ALJ Nisnewitz to obtain the assistance of a medical expert to aid in the

interpretation of Ms. Blumensohn's disability onset date.  A second hearing was held before

ALJ Nisnewitz, and on October 22, 2010, ALJ Nisnewitz again rejected Ms. Blumensohn's

contention that she was disabled prior to her 22nd birthday.  Ms. Marlow as court-appointed

guardian for Ms. Blumensohn appealed this final ruling to the U.S. District Court for the

Eastern District of New York, *pro se*, on February 17, 2011.

214.   **Error:**  In issuing both decisions, ALJ Nisnewitz erred by failing to correctly

apply Social Security Ruling 83-20, which instructs an ALJ to infer a mental illness onset date

prior to the actual start of recorded treatment, if such inference is consistent with available

evidence.  Despite this rule, ALJ Nisnewitz refused to permit an inference of disability which

was supported by medical evidence and witness testimony.  Instead, ALJ Nisnewitz complained

of a dearth of psychiatric treatment records prior to Ms. Blumensohn's 22nd birthday and

rejected her application for benefits.  ALJ Nisnewitz erred as a matter of law in this

determination.  After explicit instruction on remand to apply Social Security Ruling 83-20, ALJ

Nisnewitz, once again, ignored compelling medical evidence such as Ms. Blumensohn's

institutionalization on December 6, 1967 (when she was 12 years old) and a psychological

report on August 1, 1967, which supported a finding that Ms. Blumensohn was disabled by that

date and entitled to DAC benefits.

d)   **Plaintiff Carmen Duran**

215.   **Background Facts:**  Carmen Duran, born November 19, 1959, is a 51-year-old woman who lives in Richmond Hill, New York.  She has been unable to work since 1998, which was the last time she engaged in substantial gainful activity.  Ms. Duran has a third-grade education, meets the criteria for Listing of Impairments section 12.05 Mental Retardation, and has an IQ measured in the 40s.  Ms. Duran reads at a second grade level and has difficulty communicating in English.  Her work history includes some factory work, applying price tickets to clothing and babysitting.

216.   **Disabilities:**  Ms. Duran suffers from several disabling conditions, including cognitive impairment, depression, post-traumatic stress disorder, adjustment disorder, osteoarthritis and chronic back pain.

217.   **Procedural History:**  Ms. Duran first applied for SSI disability benefits on June 30, 2006.  She appealed the denial of benefits on February 13, 2007.  ALJ Jay L. Cohen held a hearing, after which he determined that Ms. Duran was not disabled.  The Appeals Council remanded the case for further proceedings on January 16, 2009, noting that ALJ Cohen had not adequately evaluated the opinions of the treating and non-treating physicians and had failed to adequately address Ms. Duran's claims of physical disability.  In addition, ALJ Cohen did not consider the full range of factors when assessing Ms. Duran's credibility.  On September 3, 2009, ALJ Hoppenfeld heard the case on remand, after which she denied Ms. Duran benefits for a second time.  On November 24, 2010, Ms. Duran requested that the Appeals Council review ALJ Hoppenfeld's decision, but to date she has not received a decision on this request.

218.   **Errors:**  ALJ Hoppenfeld's decision was premised on the following errors:

a.   **Treating Physician Rule:**  ALJ Hoppenfeld failed to properly consider the opinion of Ms. Duran's treating psychiatrist, Dr. Rodolfo Sandin, who

submitted a report stating that Ms. Duran experiences restriction of aptitudes needed for basic tasks associated with holding a job such as cooperating with coworkers, responding to supervisors, maintaining regular attendance, being punctual within customary tolerances and performing at a consistent pace without an unreasonable number of rest periods. Despite these significant obstacles to employment, in rejecting Ms. Duran's benefits request, ALJ Hoppenfeld chose to cherry-pick one statement from the report which provided that Ms. Duran's speech was coherent, her affect and dress were appropriate, and she was oriented to person, place, and time.

b. **Failure to develop the record:** Though the medical evidence conflicted, ALJ Hoppenfeld failed to complete the record by following up with Ms. Duran's treating physicians. Instead, she simply concluded that "the treating source did not supply sufficient basis for an inability to function." This failure to develop additional facts directly conflicts with the established requirements of a Social Security benefits hearing.

c. **Erroneous credibility determination:** ALJ Hoppenfeld relied on the opinion of a consultative psychologist in concluding that Ms. Duran's testimony lacked credibility. To further support this vacuous conclusion, ALJ Hoppenfeld determined that Ms. Duran can manage money, care for children, travel, and maintain her household. This finding is fatally flawed. Indeed, Ms. Duran performs these functions *only* with supervision, sometimes by her 72-year-old mother, her children, or the

home aide assigned to her household. In fact, Ms. Duran does not drive, she does not leave the house alone because her children fear that she will not remember to look both ways before stepping into the street; she does not even carry her own wallet, her children do.

219.   **Other Errors:** Stating that she did not "trust" the diagnosing facility, ALJ Hoppenfeld wrongly rejected the report of a New York State-licensed facility, which concluded that Ms. Duran has cognitive deficiencies. Instead of relying on this fully acceptable report, ALJ Hoppenfeld referred Ms. Duran to a consultative examiner who utilized a different and less comprehensive test to determine that Ms. Duran had greater cognitive abilities than she claimed. Notably, the particular test administered by the consultative examiner is expressly prohibited in New York State for the purpose of assessing cognitive abilities.

### e)   **Plaintiff John Edwards**

220.   Mr. Edwards' case was heard by ALJ Nisnewitz. ALJ Nisnewitz's decision, denying benefits to Mr. Edwards, was premised on several errors, including failure to abide by the Treating Physician Rule, failure to develop the record, erroneous adverse credibility determinations, and failure to support conclusions with substantial evidence.

221.   **Background Facts**: John Edwards, born August 14, 1965, is a 45-year-old man with a ninth-grade education who lives alone in Brooklyn, New York. He has been unable to work since July 1, 2003, and has not engaged in substantial gainful activity since at least that date. When he was able to work, Mr. Edwards held the position of truck helper through which he assisted truck drivers in loading and unloading payloads, among other tasks. In performing this work, he engaged in frequent heavy lifting that caused certain of his medical problems.

222.   **Disabilities**: Mr. Edwards suffers from multiple disabling conditions, including deteriorating herniated discs, which have caused extremely limited mobility and intense pain,

asthma, high cholesterol, depression, bipolar disorder, panic attacks and difficulty with memory and concentration. Mr. Edwards' depression prevents him from tolerating "even low stress jobs," as determined by his treating physician. Mr. Edwards also hears voices calling his name and telling him to sell drugs and rob people.

223. **Procedural History**: On August 1, 2006, Mr. Edwards appealed the denial of benefits. ALJ Nisnewitz held a hearing on July 23, 2007, and on December 17, 2007, ALJ Nisnewitz rendered a decision finding Mr. Edwards not disabled. Mr. Edwards requested review by the Appeals Council, which in turn vacated the decision and remanded the matter back to ALJ Nisnewitz, citing ALJ Nisnewitz's failure to abide by the Treating Physician Rule and his failure to adequately develop the record or support his conclusions. ALJ Nisnewitz held a second hearing, and again found Mr. Edwards not disabled. On July 1, 2009, Mr. Edwards appealed the second decision by ALJ Nisnewitz to the Appeals Council, stating that ALJ Nisnewitz failed to properly evaluate his psychiatric impairment and his work-related physical limitations. Mr. Edwards' request is currently pending.

224. **Errors**: ALJ Nisnewitz's first decision, as reviewed by the Appeals Council, was premised on the following errors:

    a.    **Treating Physician Rule**: ALJ Nisnewitz ignored the requirements of the Treating Physician Rule by failing to accord controlling weight to Mr. Edwards' treating sources (or, in the alternative, explain the basis for declining to give controlling weight to the physicians' diagnoses).[2]

---

[2] In his second decision, which is pending review by the Appeals Council, ALJ Nisnewitz implemented the Treating Physician Rule incorrectly by requiring that medical opinions be supported by objective evidence, such as laboratory results. In fact, the rule is that treating

b. **Failure to develop the record**:  ALJ Nisnewitz discounted all of the opinion evidence, in part, because of his failure to clarify the nature and severity of Mr. Edwards' depression and the effect of the assessed limitations on his occupational potential.  The Appeals Council also required ALJ Nisnewitz to give further consideration to Mr. Edwards' maximum residual functional capacity and to request additional medical evidence, or opinion clarification, where necessary.

c. **Failure to support conclusion with substantial evidence**:  ALJ Nisnewitz based his central conclusion—that Mr. Edwards could perform a full range of light work—on his erroneous belief that Mr. Edwards' ongoing substance abuse was immaterial to the disability determination. In fact, the Appeals Council specifically instructed ALJ Nisnewitz to determine "the impact of [Mr. Edwards'] drug abuse on his mental impairment" and whether drug addiction is a material contributing factor to the finding of disability.  Despite this directive, ALJ Nisnewitz affirmatively ignored the Appeals Council.

d. **Erroneous credibility determination**:  In assessing Mr. Edwards' testimony, ALJ Nisnewitz noted that Mr. Edwards' subjective complaints about the persistence, intensity, and limiting effects of his symptoms were "not entirely credible."  However, he did so without making *any*

---

physicians must be accorded controlling weight unless the opinions are substantially contradicted by the record evidence.

*evaluation* of Mr. Edwards' subjective complaints and their impact on his

residual functional capacity, as required by law.[3]

### f)   Plaintiff Ernesta Gutierrez

225.   Ms. Gutierrez's case was heard by ALJ Cofresi.  ALJ Cofresi's decision, denying

benefits to Ms. Gutierrez, was premised on several errors, including his failure to abide by the

Treating Physician Rule, failure to consider the effect of the claimant's impairments in

combination rather than individually, erroneous adverse credibility determinations, and  failure

to support conclusions with substantial evidence.

226.   **Background Facts**:  Ms. Gutierrez, born November 7, 1966, has only a marginal

education and is unable to communicate effectively in English.  She has been disabled since at

least February 20, 2008 and has not engaged in substantial gainful activity since that date.  She

had previously worked as a private housekeeper and assistant cook.

227.   **Disabilities:**  Ms. Gutierrez suffers from several disabling medical conditions

including low back pain, scoliosis, bilateral knee patello-femoral syndrome, bilateral shoulder

rotator cuff tendinitis, vertigo/dizziness, insomnia and depressive disorder, among other

problems.  Her treating psychotherapist opined that her mental illnesses make it impossible for

her to remember locations and work-like procedures, carry out short and simple instructions, or

perform at a consistent pace without an unreasonable number of rest periods, all of which make

it unrealistic for her to seek employment.

228.   **Procedural History:**  Ms. Gutierrez applied for SSI benefits on March 11, 2009.

Her claim was initially denied and a hearing was held before ALJ Cofresi, who issued a

---

[3]  In his second decision, ALJ Nisnewitz made the same adverse finding regarding Mr.
Edwards' credibility, and further noted that his subjective complaints were not supported by
the medical record. In fact, subjective complaints may not be disregarded simply because
they are not substantiated by objective medical evidence according to SSR 96-7p.

decision finding Ms. Gutierrez ineligible for benefits.  On December 7, 2010, the Appeals

Council denied Ms. Gutierrez's request for review.  On February 15, 2011, Ms. Gutierrez

requested an extension of time from the Appeals Council to file an action in federal district

court seeking the review of ALJ Cofresi's decision finding her not disabled within the meaning

of the Act.

229.  **Errors**:  ALJ Cofresi's decision was premised on the following errors:

a.  **Treating Physician Rule**:  ALJ Cofresi failed to abide by the Treating

Physician Rule.  Without explanation, he gave the opinions of Ms.

Gutierrez's treating physician and psychotherapist little weight, and

engaged in no analysis of the statutorily required factors for determining

how much non-controlling weight should be given to the treating

physicians' opinions.  ALJ Cofresi discounted these opinions largely

because they did not reflect his own interpretation of the medical

evidence, essentially substituting his own lay opinions for those of

medical professionals.

b.  **Failure to consider impairments in combination**:  ALJ Cofresi

improperly discounted the limiting effects of Ms. Gutierrez's

impairments in part because he failed to consider the effect of her

depression combined with her other impairments, as is required by the

Social Security law.

c.  **Erroneous credibility determination**:  ALJ Cofresi found that Ms.

Gutierrez's description of her symptoms, including their intensity,

persistence and limiting effects was not credible.  In reality, Ms.

Gutierrez's statements were credible and consistent with objective medical evidence, which ALJ Cofresi ignored.  Further, even in the absence of objective medical evidence, ALJ Cofresi was under an obligation to consider Ms. Gutierrez's statements independently, and to provide reasons for his credibility determinations.  ALJ Cofresi did neither.

d.   **Failure to support conclusion with substantial evidence**:  ALJ Cofresi, in part, based his determination that Ms. Gutierrez was employable on his erroneous finding that she was literate and able to communicate in English.  Apparently, ALJ Cofresi came to this conclusion based on his own conviction that anyone who has lived in the United States for a period of years could communicate effectively in English.  He wholly ignored evidence that in fact, Ms. Gutierrez is unable to speak or communicate in English with any proficiency, a fact which should have been considered his assessment of her residual functional capacity.

e.   **Other errors**:  ALJ Cofresi also demonstrated significant bias against Ms. Gutierrez for her immigrant status.  Beyond the improper application of the law with regard to her language skills, examples of harsh language directed at Ms. Gutierrez and skewed reasoning with regard to her immigrant status abound.  For example, although the elements of a disability claim relate only to the claimant's medical condition, ALJ Cofresi questioned Ms. Gutierrez about her immigration history at length, going back more than 20 years, and asking for details about when she

entered the United States and whether she had had a visa or had entered illegally. Additionally, ALJ Cofresi went out of his way to use Ms. Gutierrez's immigration history to cast her in a negative light; although Ms. Gutierrez has been a legal permanent resident throughout the application process, ALJ Cofresi described her as having evaded and disregarded the law. This entire line of questioning was irrelevant to her eligibility for disability benefits and evidenced ALJ Cofresi's flagrant bias against claimant.

g)      **Plaintiff Julia Juan**

230.    Ms. Juan's case was heard by ALJ Nisnewitz. ALJ Nisnewitz's decision, denying benefits to Ms. Juan, was premised on several errors, including failure to abide by the Treating Physician Rule, erroneous credibility determinations, and failure to support conclusions with substantial evidence.

231.    **Background Facts**: Julia Juan, born November 23, 1952, is a 58-year-old resident of Elmhurst, New York. Ms. Juan has been disabled since February 5, 2005, and has not engaged in substantial gainful employment since that date. She had previously worked as a school kitchen helper.

232.    **Disabilities**: Ms. Juan suffers from the following severe impairments within the meaning of the Act: lumbago,[4] diabetes, hypertension, obesity, arthritis, allergies and sinusitis. Ms. Juan experiences constant pain in her back and the side of her leg, as well as muscle spasms and cramps in her toes.

---

[4] Lombago is a condition causing acute or chronic pain in the lower back.

233.   **Procedural History**: Ms. Juan applied for SSD benefits on August 19, 2008,

and for SSI benefits on August 22, 2008.  These claims were both initially denied and a hearing

was held before ALJ Nisnewitz, who rendered a decision on September 30, 2009 finding Ms.

Juan not eligible for benefits.  Ms. Juan requested review by the Appeals Council.  On

September 14, 2010, the Appeals Council found that ALJ Nisnewitz had failed to provide an

adequate rationale for the weight he assigned to the treating physicians' opinions.  The Appeals

Council remanded her case back to ALJ Nisnewitz, despite Ms. Juan's request to be heard

before a different ALJ, amounting, in effect, to a denial of a fair hearing.  In late March 2011,

Ms. Juan appealed ALJ Nisnewitz's second denial of benefits to the Appeals Council.

234.   **Errors**: ALJ Nisnewitz's decision was premised on the following errors:

a.   **Treating Physician Rule:**  ALJ Nisnewitz failed to explain why he

afforded the opinion of the non-examining physician more weight than

that of Ms. Juan's treating physician.  ALJ Nisnewitz also failed to

explain why he chose to discount the three other medical opinions in the

record which assessed much more severe limitations than the single

residual functional capacity assessment that supported ALJ Nisnewitz's

determination.

b.   **Erroneous credibility determination**:  ALJ Nisnewitz improperly

discounted Ms. Juan's testimony concerning the intensity, persistence,

and limiting effects of her symptoms, and applied incorrect legal

standards.  At the hearing, Ms. Juan testified that she could only stand for

up to ten minutes and only walk for two blocks before becoming fatigued.

She also detailed constant pain in her back, leg, and toes, and stated that

she experiences pain when rising from the toilet.  ALJ Nisnewitz refused

to believe Ms. Juan's testimony regarding the pain she experienced.  He

also ignored supporting objective medical evidence and distorted Ms.

Juan's care for her grandson with help from a neighbor to support his

"theory" that she lacked a disability.

c.   **Failure to support conclusions with substantial evidence**:  ALJ

Nisnewitz rejected Ms. Juan's testimony about the severity of her pain in

part because her treatment has been "mostly conservative."  This was

legal error as established precedent confirms that an ALJ cannot impose

his own opinion of pain severity based on the course of medical treatment

recommended.  ALJ Nisnewitz committed further error when he

determined that Ms. Juan's depression is a non-severe impairment.  This

finding ignored the medical records of several examining physicians who

observed signs of depression in Ms. Juan sufficient to support a

conclusive presumption that Ms. Juan is disabled.

h)   **Plaintiff Jane Doe**

235.   Ms. Doe's case was heard by ALJ Fier.  ALJ Fier's decision, denying benefits to

Ms. Doe, was premised on several errors, including failure to honor a request for a

representative, failure to develop the record, failure to properly apply the Treating Physician

Rule and failure to support conclusions with substantial evidence.

236.   **Background Facts:**  Jane Doe is a 46-year-old woman who lives in Far

Rockaway, New York.  She has worked as a housecleaner and babysitter, but she has not

engaged in substantial gainful activity since 2002.  She receives public assistance.

237. **Disabilities:** Ms. Doe suffers from several disabling conditions, including major depressive disorder, panic disorder with agoraphobia, and obsessive-compulsive disorder. Due to her mental illness, Ms. Doe has been exempted as unemployable from New York City's work requirements for recipients of public assistance.

238. **Procedural History:** In 2007, Ms. Doe filed an application for SSI benefits, which was denied. Ms. Doe appealed and a hearing was held in 2009 before ALJ Fier at which Ms. Doe appeared *pro se*. One month after the hearing, ALJ Fier rendered a decision finding Ms. Doe not disabled. In late 2009, with the aid of counsel, Ms. Doe appealed ALJ Fier's decision to the Appeals Council. Ms. Doe submitted additional evidence to the Appeals Council earlier this year. Her request for review is still pending.

239. **Errors:** ALJ Fier's decision was premised on the following errors:

   a. **Failure to honor a request for a representative:** Although regulations required ALJ Fier to ask Ms. Doe questions to ensure she understood her right to representation, ALJ Fier did not do so. Instead, he opened the hearing by concluding that it was "evident" that Ms. Doe wished to proceed without representation. When Ms. Doe *subsequently* asked if she should have an attorney, and indicated that an agency had offered her representation if given time to prepare, ALJ Fier did not offer an adjournment and conducted the hearing without any representation for Ms. Doe, who suffers from several mental impairments.

   b. **Failure to develop the record:** ALJ Fier failed to develop the record—as was his duty—for Ms. Doe, a *pro se*, mentally ill claimant. At the hearing, Ms. Doe testified that she had an emergency room visit in 2008

and that she was currently receiving mental health treatment.  Despite his mandate to do so, ALJ Fier made no attempt to obtain any related records regarding her hospital visit or treatment notes.  Additionally, during the hearing, he asked no questions about the various medications prescribed to Ms. Doe nor did he enquire about Ms. Doe's depression, panic attacks, fears of leaving the house, or obsessive compulsive behaviors.

c.      **Treating Physician Rule**:  ALJ Fier failed to assign weight to numerous medical source statements about Ms. Doe's mental limitations.  Instead, he weighed the various medical source statements only as they apply to exertional levels of work, crediting an unnamed treating source and an unnamed consultative source for his finding that Ms. Doe can perform work at any exertional level.  At no point did he assign weight to the opinions in the record regarding mental limitations.

d.      **Failure to support conclusion with substantial evidence**:  ALJ Fier failed to base his analysis of Ms. Doe's residual functional capacity assessment on all of the relevant evidence.  He ignored most of the extensive non-exertional limitations described in the record, improperly marginalizing her ailments and concluding, without proper basis, that she could perform "simple work not requiring too much interaction with others."

*       *       *

240.    It is quite clear that each of the plaintiffs has suffered from the same series of errors that this Court, time and time again, has been called upon to correct.  Absent action from this Court, Class Plaintiffs will be subjected to continuing bias from the Named ALJ's errors.

241.    In the meantime, the denial of SSI and SSD benefits is causing plaintiffs and other members of the class to endure severe deprivation and hardship.

### IRREPARABLE INJURY AND NO ADEQUATE REMEDY AT LAW

242.    The Commissioner's failure to take adequate steps to prevent Chief ALJ Nisnewitz, and ALJs Cofresi, Fier, Hoppenfeld, and Strauss from failing to provide fair hearings, or from rendering decisions based on bias has led to the wrongful denial of benefits to plaintiffs and class members and has caused them severe deprivation and hardship, which is irreparable injury.

243.    Plaintiffs and class members have no adequate remedy at law.

### COUNT I –SOCIAL SECURITY ACT –
### 42 U.S.C. §§ 405(b)(1) AND 1383(c)(1)

244.    Plaintiffs repeat and reallege Paragraphs 1 through 243, as if fully set forth herein.

245.    As a result of the bias of Chief ALJ Nisnewitz and ALJs Cofresi, Fier, Hoppenfeld, and Strauss against Social Security Act claimants, and their failure to follow applicable law and applicable instructions from the Appeals Council and the federal district courts, plaintiffs and members of the plaintiff class have been denied fair hearings before an impartial adjudicator in violation of the Social Security Act, 42 U.S.C. §§ 405(b)(1) and 1383(c)(1).

## COUNT II –ADMINISTRATIVE PROCEDURE ACT –
### 5 U.S.C. § 556(b)

246.     Plaintiffs repeat and reallege Paragraphs 1 through 245, as if fully set forth herein.

247.     As a result of the bias of Chief ALJ Nisnewitz and ALJs Cofresi, Fier, Hoppenfeld, and Strauss against Social Security Act claimants, and their failure to follow applicable law and applicable instructions from the Appeals Council and the federal district courts, plaintiffs and members of the plaintiff class have been denied fair hearings before an impartial adjudicator in violation of the Administrative Procedure Act, 5 U.S.C. § 556(b).

## COUNT III – THE NAMED ALJs VIOLATED THE DUE PROCESS
## CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES
### CONSTITUTION

248.     Plaintiffs repeat and reallege Paragraphs 1 through 247, as if fully set forth herein.

249.     As a result of the bias of Chief ALJ Nisnewitz and ALJs Cofresi, Fier, Hoppenfeld, and Strauss against Social Security Act claimants, and failure to follow applicable law and applicable instructions from the Appeals Council and the courts, plaintiffs have been and will be denied fair hearings before an impartial adjudicator, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

## COUNT IV – COMMISSIONER VIOLATED THE DUE PROCESS
## CLAUSE OF THE FIFTH AMENDMENT TO THE
### UNITED STATES CONSTITUTION

250.     Plaintiffs repeat and reallege Paragraphs 1 through 249, as if fully set forth herein.

251.     Defendant is, or should be aware, of the bias and other improper conduct of Chief ALJ Nisnewitz and ALJs Cofresi, Fier, Hoppenfeld, and Strauss, but has failed to take

adequate steps to eliminate the harm that their bias and improper conduct is causing to Social

Security Act claimants, in violation of the Social Security Act and the Due Process Clause of

the Fifth Amendment.

## COUNT V – THE NAMED ALJs' DECISIONS ARE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND ARE CONTRARY TO LAW – 42 U.S.C. §§ 405(g) AND 1383(c)(3)

252.    Plaintiffs repeat and reallege Paragraphs 1 through 251, as if fully set forth

herein.

253.    The decisions in the individual named plaintiffs' claims are a product of the bias

of Chief ALJ Nisnewitz and ALJs Cofresi, Fier, Hoppenfeld, or Strauss, are not supported by

substantial evidence and are contrary to law.  42 U.S.C §§ 405(g) and 1383(c)(3).

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs respectfully request that this Court:

1.    Certify this action as a class action pursuant to Rule 23(b)(2) of the Federal

Rules of Civil Procedure;

2.    Declare, pursuant to 28 U.S.C. §§ 2201 and 2202 that Chief ALJ Nisnewitz and

ALJs Cofresi, Fier, Hoppenfeld, and Strauss: (a) are generally biased against claimants for

benefits under the Social Security Act; (b) routinely fail to apply applicable law and district

court and Appeals Council instructions; and (c) that Chief ALJ Nisnewitz and ALJs Cofresi,

Fier, Hoppenfeld, and Strauss's conduct deprived Class Plaintiffs of their right to a fair hearing

before an impartial adjudicator, in violation of the Social Security Act, the Administrative

Procedure Act, and the Due Process Clause of the Fifth Amendment to the United States

Constitution;

3.    Enter a permanent injunction prohibiting the Commissioner from allowing the

Named ALJs to preside over any claims for SSI or SSD benefits;

4.    Enter a permanent injunction ordering defendant to:

    a.    Provide plaintiffs and class members who have received an unfavorable decision from the Named ALJs with the opportunity for new hearings before Administrative Law Judges other than the Named ALJs;

    b.    In the event that the Named ALJs continue hearing disability claims, provide them with retraining to ensure that in the future decisions of the Named ALJs are not tainted by generalized bias; and

    c.    In the event that the Named ALJs continue hearing disability claims, develop a system to monitor any future decisions of the Named ALJs to ensure that they are not tainted by generalized bias.

5.    Order the Commissioner to notify plaintiff class members of the determination of this court and of their right to new hearings on their Social Security Act claims.

6.    Annul the decision denying benefits or partially denying benefits in each of the Class Plaintiffs' claims and remand them to the Commissioner for new hearings or for the award of benefits before an Administrative Law Judge other than the Named ALJs.

7.    Award plaintiffs' attorneys' fees, costs and expenses under the Equal Access to Justice Act, 28 U.S.C. §§ 2412(a) and (d) or any successor legislation.

8.    Grant such other relief as the court may deem just and proper.

Dated:   New York, New York
         April 12, 2011

GIBSON, DUNN & CRUTCHER LLP

By: _____
        Jim Walden (JW-0447)
        Oliver M. Olanoff (OO-0209)
        Tyler H. Amass (TA-7742)
        Sharon I. Grysman (SG-2383)

        200 Park Avenue, 50th Floor
        New York, New York 10166-0193
        Telephone: 212.351.4000
        Facsimile: 212.351.4035

        URBAN JUSTICE CENTER

        Ian F. Feldman (IF-9140)
        Emilia Sicilia (ES-1215)

        123 William Street, 16th Floor
        New York, New York 10038
        Telephone: 646.602.5600
        Facsimile: 212.533.4598

        *Attorneys for Plaintiffs*