UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                           :
LORRAINE PADRO, LESLIE BAILEY,                             :
MARIE THELOT, SARAH RODRIGUEZ,                             :
DHANASAR RAMAN, TOBY MARLOW, as                            :
court-appointed guardian for JUDITH                        :
BLUMENSOHN, CARMEN DURAN, JOHN                             :
EDWARDS, ERNESTA GUTIERREZ,                                :
JULIA JUAN, and JANE DOE, individually                     :   Index No. 11-CV-1788 (CBA) (RAM)
and on behalf of all others similarly situated,            :
                                                           :
                    Plaintiffs,                            :
                                                           :
       -against-                                           :
                                                           :
CAROLYN W. COLVIN,                                         :
Acting Commissioner of Social Security,                    :
                                                           :
                    Defendant.                             :
-----------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

| | |
|---|---|
| URBAN JUSTICE CENTER | GIBSON, DUNN & CRUTCHER LLP |
| 123 William Street, 16th Floor | 200 Park Avenue |
| New York, New York 10038 | New York, NY 10166-0193 |
| Telephone: (646) 602-5667 | Telephone: (212) 351-4000 |
| *Attorneys for Plaintiffs* | Facsimile: (212) 351-4035 |
| | *Attorneys for Plaintiffs* |

July 17, 2013

# TABLE OF CONTENTS

Page

I. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE .................................................................................................................. 1

    A. The Proposed Settlement Is Procedurally Fair and is the Result of Serious, Informed, and Non-Collusive Negotiations .............................................................. 3

    B. The Settlement Agreement is Substantively Fair and Meets the Criteria Set Forth by the Second Circuit in *Grinnell* ................................................................ 5

        1. The Complexity, Expense and Likely Duration of the Litigation .............. 5

        2. The Reaction of the Class ........................................................................... 6

        3. The Stage of the Proceedings and the Amount of Discovery Completed ................................................................................................... 8

        4. Risks Involved in Establishing Liability, Damages, and in Maintaining the Class Action through Trial ............................................... 8

        5. The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and in Light of All Risks of Litigation .................................................................................................... 9

II. RESPONSES TO SUBMISSIONS FROM NON-CLASS MEMBERS .......................... 10

    A. Submissions from Potential Class Members ......................................................... 10

    B. Submission from Larry J. Butler (Dkt #152) ........................................................ 10

    C. Submission by the Association of Administrative Law Judges, IFPTE, and ALF-CIO (the "AALJ Submission") (Dkt. #148) ................................................. 12

    D. Submission of Jacques M. Farhi (Dkt. #140) ....................................................... 12

III. CONCLUSION ................................................................................................................ 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .................................................................................................... 11

*Chavarria v. N.Y. Airport Serv., LLC*,
   875 F. Supp. 2d 164 (E.D.N.Y. 2012) ........................................................................... 9

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ............................................................................... 3, 5, 7, 8

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ..................................................................................... 2, 3, 7

*Duchene v. Michael Cetta, Inc.*,
   No. 06 Civ. 4576 (PAC) (GWG), 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009) ......... 10

*Hicks v. Stanley*,
   No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ....................... 7

*In re Am. Bank Note Holographics*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................................ 5

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................ 2

*In re Global Crossing Sec. Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................... 6

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
   142 F.R.D. 588 (S.D.N.Y. 1992) .................................................................................... 8

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 46 (S.D.N.Y. 1993) .................................................................................. 6, 9

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................................... 3

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y.) 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997) ........................... 7

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) .................................................................................... 2

*In re Warner Commc'ns. Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986) ............................ 2

## TABLE OF AUTHORITIES
(continued)

Page(s)

*In re WorldCom Sec. Litig.*,
  No. 02 Civ. 3288 (DLC), 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) .................................. 2

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................................................. 8

*Malchman v. Davis*,
  706 F.2d 426 (2d Cir. 1983) ................................................................................................. 5

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................................. 6

*Marisol A. v. Giuliani*,
  185 F.R.D. 152 (S.D.N.Y. 1999) ......................................................................................... 7

*Massiah v. MetroPlus Health Plan, Inc.*,
  11-CV-05669 BMC, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ............................... 2, 3, 5

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1995) ................................................................................................. 2

*Reid v. SuperShuttle Int., Inc.*,
  No. 08 CV 4854 (JG) (VVP), 2012 WL 3288816 (E.D.N.Y. Aug. 10, 2012) ......................... 4

*Spann v. AOL Time Warner, Inc.*,
  No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ............................................. 2

*Thompson v. Metropolitan Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) ........................................................................................... 3

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................................................ 2, 7

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ................................................................................................... 3

**Other Authorities**

*4 Newberg on Class Actions* § 11:41 (4th ed. 2007) ................................................................ 5

*See* 7B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1803 (3d ed. 1998) 11

**Rules**

Fed. R. Civ. P. 23(e)(1)(C) ...................................................................................................... 3

Plaintiffs are applicants for Social Security Disability Insurance Benefits and/or Supplemental Security Income payments based on disability. On April 12, 2011, Plaintiffs, on behalf of the putative class, filed against the Social Security Administration ("SSA") a Complaint alleging that five Administrative Law Judges (the "Named ALJs") in SSA's Queens Office of Disability Adjudication and Review ("QODAR") have exhibited "general bias" against claimants for disability benefits. On May 4, 2011, plaintiffs filed an Amended Complaint in this action (hereinafter referred to as "the Case"), which added three named plaintiffs and supplemented the allegations. The Commissioner of Social Security has expressly denied any wrongdoing, as alleged in the Case or otherwise, and does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged in the Case. Nonetheless, as set forth below, the parties consider it desirable to settle the Case on the terms set forth in the proposed Settlement Agreement.

On May 3, 2013, this Court conditionally certified the Settlement Class and issued an Order Preliminarily Approving Class Action Settlement. The Court scheduled the final Fairness Hearing for July 24, 2013 and ordered notice to be provided to class members in accordance with Sections VII(B) and VIII of the Settlement.

Plaintiffs respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Final Approval of Class Action Settlement. For the reasons set for the below, the proposed settlement (the "Settlement") is fair, reasonable, and adequate.

## I.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Under Federal Rule of Civil Procedure 23(e) and established precedent, this Court should approve a class action settlement if it finds that, on the whole, the settlement is fair, reasonable, and adequate. *See, e.g., Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d

Cir. 1995); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2004 WL 2591402, at *10 (S.D.N.Y. Nov. 12, 2004) ("[T]he district court must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not the product of collusion. . . . A district court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms.") (internal quotation marks and citations omitted).

It is well-recognized that the law favors settlements, particularly in complex litigation and class action suits. "Courts examine procedural and substantive fairness in light of the 'strong judicial policy favoring settlements' of class action suits." *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 05669 (BMC), 2012 WL 5874655, at *2 (E.D.N.Y. Nov. 20, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999) ("Federal courts look with great favor upon the voluntary resolution of litigation through settlement. . . . This rule has particular force regarding class action suits."); *In re Warner Commc'ns. Sec. Litig.*, 618 F. Supp. 735, 740 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986) ("There is little doubt that the law favors settlements, particularly of class action suits.") (internal citations omitted). And "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Massiah*, 2012 WL 5874655, at *2 (citing *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)).

In determining whether a class action settlement should be approved, the court must decide whether the proposed settlement "is fair, reasonable and adequate." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); Fed. R. Civ. P. 23(e)(1)(C). "The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato*, 236 F.3d at 85. Judicial discretion should be exercised in light of the general policy favoring the settlement of litigation. *Weinberger*, 698 F.2d at 73.

Here, all of the factors weigh strongly in favor of granting final approval of the Settlement.

### A. The Proposed Settlement Is Procedurally Fair and is the Result of Serious, Informed, and Non-Collusive Negotiations

"To determine whether a settlement is procedurally fair, courts examine the negotiating process leading to the settlement." *Massiah*, 2012 WL 5874655, at *2. In reviewing the negotiating process, "courts have demanded that the compromise be the result of arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Weinberger*, 698 F.2d at 74 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463-66 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)). As a preliminary matter, a proposed class action settlement enjoys a strong presumption that it is fair, reasonable, and adequate where, as here, it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation. *See, e.g., Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of

3

fairness attaches to the proposed settlement . . . and 'great weight' is accorded to the recommendations of counsel who are most closely acquainted with the facts of the underlying litigation.") (citations omitted).

The instant Settlement arises out of more than ten months of adversarial, arm's-length negotiations, which included conferences before this Court. Prior to the commencement of negotiations, plaintiffs sought discovery over defendant's strenuous objections. (Dkt ## 16 – 22). Indeed, defendants opposed discovery, and motion practice resulted in a court order permitting limited discovery, which was conducted while the Defendant sought a stay of discovery pending the Court's consideration of a proposed motion to dismiss. (Dkt ## 23, 49, 54, 55, 58, 61, 64). After limited discovery was conducted, the parties fully briefed and argued the government's dispositive motion to dismiss. (Dkt ## 40, 42 – 48, 50).

As reflected in the defendant's filings, the government has consistently disputed Plaintiffs' claims of bias, arguing *inter alia* that Plaintiffs' claims of bias by the Named ALJs lack factual support, are insufficient as a matter of law, and are procedurally flawed. (*See, e.g.,* Dkt. # 40). Plaintiffs' strenuously disagreed, arguing that their claims of general bias are supported by ample evidence, are supported by relevant law from this Circuit, and are procedurally sound. (*See, e.g.,* Dkt. # 42).

In sum, all of the parties' pre-settlement litigation efforts exhibit both the seriousness of this litigation and the informed nature of the parties' subsequent settlement negotiations. (Declaration of Emilia Sicilia ("Sicilia Dec."), ¶ 2). *See, e.g., Reid v. SuperShuttle Int., Inc.*, No. 08 Civ. 4854 (JG) (VVP), 2012 WL 3288816, at * 2 (E.D.N.Y. Aug. 10, 2012). Moreover, the settlement negotiations between the parties were, at times, contentious. (Sicilia Dec., ¶ 2).

4

Taken together, these facts make clear that the negotiations were non-collusive in nature and resulted from serious and informed discussions.

**B.      The Settlement Agreement is Substantively Fair and Meets the Criteria Set Forth by the Second Circuit in *Grinnell***

In evaluating the fairness, reasonableness and adequacy of a settlement, courts consider the "substantive terms of the settlement compared to the likely result of a trial." *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983). To determine whether a settlement is substantively fair, courts evaluate whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*" *Massiah*, 2012 WL 5874655, at *2. The factors to be considered are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (internal citations omitted); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) (citing *Grinnell*, 495 F.2d at 463). As explained in greater detail below, the parties' Settlement meets the above criteria for approval.

**1.      The Complexity, Expense and Likely Duration of the Litigation**

It is well-recognized that "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *4 Newberg on Class Actions* § 11:41 (4th ed. 2007). If the Settlement is not approved, this action will likely continue for a considerable period of time and at great time and

expense to all parties involved. (Sicilia Dec., ¶ 3) However complex this matter has been, it is likely to become even more complex, time consuming, and expensive if it is to proceed to trial. (*Id.*) If the Court deems a trial necessary, the difficult factual issues in this case would likely necessitate substantial further discovery, extensive motions practice, and a costly and lengthy courtroom battle. (*Id.*) Even if plaintiffs secured a favorable verdict at trial, a jury verdict would "not be a guarantee of ultimate success." *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993). If plaintiffs prevailed, appellate proceedings would likely follow, resulting in additional expenses for all parties and delayed recovery for class members. (*Id.*) In contrast, final approval of the Settlement "would grant relief to all class members without subjecting them to the risks, complexity, duration and expense of continuing litigation." *In re Global Crossing & ERISA Sec. Litig.*, 225 F.R.D. 436, 456-57 (S.D.N.Y. 2004); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (approving settlement that resulted "in a substantial and present recovery, without the attendant risk and delay of trial"). The expense, complexity, and duration that would be involved in this case if it were to go to trial weigh in favor of the approval of the Settlement.

    2.    **The Reaction of the Class**

During the weeks since notice was sent to class members, Class Counsel has received well over 500 phone calls and over 20 written inquiries. (Sicilia Dec., ¶ 4) The overwhelming majority of individuals were seeking additional information and clarification of the terms of the Settlement in order to determine if they were class members and expressing their support for the Settlement. (*Id.*) The large response to the notices indicates that notice was successfully given in a manner most likely to reach the individuals affected by the Settlement. (*Id.*) The vast

majority of callers and writers were enthusiastic about the settlement and excited about the possibility of receiving re-hearings. (*Id.*)

As this Court is aware, there have also been submissions to the Court from potential class members. (*See generally*, Dkt ## 135-85). The only submission from a potential class member to object to the Settlement does so expressly because the individual is not aware of its terms. (Dkt. # 150).

Given the overwhelmingly positive response to the Settlement, and the relative lack of substantive objections, the class's reaction resoundingly supports approval of the Settlement. This fact is a very significant consideration in the Court's evaluation of the fairness and reasonableness of the settlement. *See Wal-Mart Stores, Inc.*, 396 F.3d at 119 ("Indeed, the favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in our *Grinnell* inquiry."); *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 163 (S.D.N.Y. 1999), *aff'd sub nom. Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) ("The Court views the small number of comments . . . as evidence of the Settlement Agreements' fairness, reasonableness, and adequacy."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.) 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997) ("A favorable reception by the Class constitutes 'strong evidence' of the fairness of a proposed settlement and supports judicial approval.") (quoting *Grinnell*, 495 F.2d at 462).

Further, even if the Court determines that the submitted objections have merit, other courts in this circuit have not hesitated to approve settlements where, as here, there is a relative lack of dissent among the class members. *See, e.g., D'Amato*, 236 F.3d at 86-87 (eighteen objections out of 27,883 notices); *Hicks v. Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) (three objectors out of approximately 100,000 potential class

7

…

members); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 337-38 (S.D.N.Y. 2005) (seven objectors out of 4,000,000 potential class members and 830,000 claimants).

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

Consideration of the stage of this litigation further supports the Court's approval of the Settlement. This litigation has been pending for over two years. At the time the Settlement was reached, discovery had already been commenced and dispositive motions had been fully briefed. The discovery, pleadings, and previous negotiations in this action have enabled Class Counsel to evaluate the nature and scope of the potential relief to class members. (Sicilia Dec., ¶ 5) Only after all of these developments and considerations has Class Counsel decided that the Settlement is fair, reasonable, and adequate. (*Id.*) *See In re Global Crossing*, 225 F.R.D. at 459 ("Plaintiffs' counsel appear to have scrutinized the facts of the Actions from the earliest stages of the litigation and developed an informed basis from which to negotiate a reasonable compromise."); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 591 (S.D.N.Y. 1992) ("The compromise reached by class counsel has been neither arbitrary nor premature, but formed after careful investigation and weighing of facts. . . . ").

### 4. Risks Involved in Establishing Liability, Damages, and in Maintaining the Class Action through Trial

The risks associated with establishing liability and damages and maintaining the instant action through trial are quite substantial and weigh heavily in favor of the Settlement. *See, e.g., Grinnell*, 495 F.2d at 463; *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. at 591-92 (S.D.N.Y. 1992) (applying *Grinnell* factors in approving settlement where "[t]he risks of establishing liability" at trial were "considerable"). As is clear from the parties' briefing on Defendant's Motion to Dismiss, there are significant substantive and procedural questions remaining in this case. Class Counsel has carefully weighed these issues and has concluded that

8

Settlement, when balanced against the risks of trial and appeals, is a far more attractive alternative for the class. (Sicilia Dec., ¶ 6) These facts further support approval of the Settlement.

### 5. The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and in Light of All Risks of Litigation

The Settlement is within the reasonable range of recovery in view of the best possible outcome and the risks associated with the litigation. (Sicilia Dec., ¶ 7) In an action that has been pending for nearly two years, this imminent and fair resolution certainly warrants approval. (*Id.*) The Settlement arises out of lengthy negotiations involving the SSA and the United States Department of Justice ("DOJ"), as well as counsel for plaintiffs, the Urban Justice Center ("UJC") and Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), both of which have extensive class action experience. (*Id.*) Were this action forced to proceed to trial, plaintiffs would be required to wait even longer for relief, and any such relief would not be guaranteed. (*Id.*) In contrast, as this Court noted in its February 7, 2013 Report and Recommendation, the Settlement would "afford[] substantial relief to claimants now and in the future." (Report and Recommendation (Feb. 7, 2013) at 14, Dkt. #119).

Moreover, this Court has held that the views of experienced counsel are "entitled to great weight." *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 172 (E.D.N.Y. 2012) (citing *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. at 46) (internal modifications omitted). It is the informed opinion of Class Counsel that, given the uncertainty and substantial expense of litigating the claims through trial and any appeals, the Settlement is fair, reasonable, and adequate for the class as a whole. (Sicilia Dec., ¶ 7) It was also considered that past ALJ bias cases—each involving only one ALJ—typically involved protracted litigation that sometimes spanned decades. (*Id.*)

9

## II. RESPONSES TO SUBMISSIONS FROM NON-CLASS MEMBERS

In addition to the several submissions from class members discussed earlier, there have been several submissions from non-class members both supporting and raising objections to the Settlement.[1]

### A. Submissions from Potential Class Members

Class Counsel notes that there has been some confusion in the submissions and in the phone calls from potential class members who have received notice of the Fairness Hearing as to whether they are part of the class. (*See, e.g.* Dkt # 161). Many individuals may believe that that Fairness Hearing is an adjudication of their individual claim, and may appear at the Fairness Hearing with information pertaining to their personal claims. (*See, e.g.* Dkt. #s 144, 154, 175). There has also been some confusion from individuals who have already received Social Security benefits but who nevertheless received notice. (*See* Dkt. # 159). If the Court desires, Class Counsel will be prepared to address the Fairness Hearing attendees before the proceedings begin on July 24 in order to help clarify the contours of the class and the purpose of the Fairness Hearing.

### B. Submission from Larry J. Butler (Dkt #152)

Mr. Butler's submission purports to allege the existence of a conspiracy between the UJC and the DOJ based on the DOJ's having "donated" "six-figure contributions of taxpayer funds"[2] to UJC's projects in the past, and based on the Settlement provision paying UJC $125,000 in

---

[1] Beyond the meritless nature of the objections from the Association of Administrative Law Judges, as well as the objections from Messrs. Butler and Farhi, Plaintiffs also note that none of them are class members, and while they can offer their comments, they lack standing to object. *See Duchene v. Michael Cetta, Inc.*, No. 06 Civ. 4576 (PAC) (GWG), 2009 WL 5841175, at *2-3 (S.D.N.Y. Sept. 10, 2009) (overruling objections that failed to demonstrate a sufficient basis for finding that the settlement was not fair and reasonable, and finding that individuals who were not members of the class lacked standing to object to the settlement).

[2] The funds received by UJC are not "donations" but government grants. They include funds available from DOJ for victim services under the Violence Against Women Act, and a grant from the Department of Housing and Development to provide discharge planning assistance to individuals with mental illness.

attorneys' fees. Mr. Butler's contentions are nonsensical. The Settlement is the result of contentious arms-length negotiations. (Sicilia Dec., ¶ 2). It is worth noting that Gibson Dunn has waived over $3 million in fees in favor of settling the case, and UJC is accepting substantially less than the market value for their legal services. (*Id.* at ¶ 9). The fees negotiated were only for time spent until settlement negotiations began, and the calculation was based on the statutory rate available under Equal Access to Justice Act (EAJA). (*Id.* at ¶ 8). In any event, Mr. Butler does not assert that UJC's fees detrimentally affect the class and therefore does not present a valid reason for withholding approval of the settlement.

And, even if he did object on this basis, his arguments would lack merit. The instant Settlement does not result in a common fund, where the award of attorney's fees might reduce the recovery available to class members. Rather, the attorneys' fees awarded pursuant to the Settlement are separate and apart from class relief. Even in common fund cases, however, attorneys are entitled to recover a reasonable amount of fees. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). Counsel from the Urban Justice Center have tirelessly devoted their energy and time to the prosecution of this litigation for over two years, and the negotiated amount represents the waiver of hundreds of thousands of dollars of potential fees. (Sicilia Dec., ¶ 9) At $125,000, the amount of attorney's fees awarded pursuant to the Settlement is appropriate and reasonable. *See* 7B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1803 (3d ed. 1998) ("The court's authority to reimburse the representative parties . . . for their attorney fees stems from the fact that the class-action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts.").

Finally, Mr. Butler's submission challenges this Court's right to conduct fact-finding and challenges the validity of the statistics and allowance rates cited in the complaint in support of plaintiffs' claims of bias by the Named ALJs. The arguments made by Mr. Butler are, in large part, reflected in the arguments asserted by defendant in its Motion to Dismiss this action. Indeed, defendant has strenuously challenged and rejected Plaintiffs' reliance on allowance rates and judicial decisions as a basis for finding bias by any ALJ. (Dkt # 40).

C. **Submission by the Association of Administrative Law Judges, IFPTE, and ALF-CIO (the "AALJ Submission") (Dkt. #148)**

The AALJ Submission also lacks merit. Its sole contention is that the settlement process was unfair to the Named ALJs. Contrary to its portrayal, however, the settlement process was extensive and vigorous. (Sicilia Dec., ¶ 2). Indeed, the settlement protects the Named ALJs by disposing of the action, thereby limiting the publicity that could well result from full-blown litigation in this case and precluding further discovery, including the possibility of depositions of the Named ALJs, which was a concern previously raised by the court during oral argument. (*See* Transcript of February 3, 2012 Proceedings, at 28-29). In any case, nothing in the AALJ submission impacts the fairness or adequacy of the Settlement to class members, and it therefore should not impact this Court's decision.

D. **Submission of Jacques M. Farhi (Dkt. #140)**

Mr. Farhi's submission raises a procedural issue for the Court based on his experience with prior class actions. However, his suggestion has little relevance to the present action. Mr. Farhi suggests we add a Presumptive Date Last Insured and "other presumptions" to the settlement agreement. Mr. Farhi explains that the so-called presumptions act to eliminate technical barriers to re-adjudication by presuming that various technical requirements are met. Presumptions had been used in past Social Security class action settlements to address specific

12

issues uncovered in the course of the litigation. The specific technical issues would have precluded relief for many class responders. But the *Padro* litigation uncovered no such technical issues that would effectively preclude relief, so no presumptions were crafted.

### III. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter the Proposed Judgment Approving Class Action Settlement and Dismissing Action, which will provide for final class action Settlement approval.

Dated: New York, New York
July 17, 2013

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Jim Walden
Jim Walden, (JW-0447)
Oliver M. Olanoff (OO-0209)

200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Fax: 212.351.4035

URBAN JUSTICE CENTER

Ian F. Feldman (IF-9140)
Emilia Sicilia (ES-1215)
Ann Biddle (AB-8386), of counsel

123 William Street, 16th Floor
New York, New York 10038
Telephone: 646.602.5668
Facsimile: 212.533.4598
*Attorneys for Plaintiffs*