UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LORRAINE PADRO, et al.,

                          Plaintiffs,

       -against-

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                       Defendant.
----------------------------------------------------------X
**AMON, Chief United States District Judge**.

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11-CV-1788 (CBA) (RLM)

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ **OCT 18 2013** ★

**BROOKLYN OFFICE**

       Pending before the Court is plaintiffs' motion for final approval of a proposed settlement agreement with the defendant Commissioner of Social Security ("Commissioner"). (D.E. # 189.) This class action was brought by claimants for Social Security disability benefits whose claims were denied by one of five Administrative Law Judges ("ALJs") at the Queens Office of Disability Adjudication and Review: ALJ Michael D. "Manuel" Cofresi, Seymour Fier, Marilyn P. Hoppenfeld, Hazel C. Strauss, and Hearing Office Chief David Z. Nisnewitz (together, the "Named ALJs"). On May 3, 2013, the Court conditionally certified the class for settlement purposes only, preliminarily approved the settlement, and approved notices of the proposed settlement to be sent to class members. (See D.E. # 132, 133.) The Court held fairness hearings on July 24, 2013 and September 16, 2013.

       Having considered all submissions and arguments before it, the Court finds that the proposed settlement agreement (D.E. # 112-1), including exhibits as revised (D.E. # 112-2, 129-2, 129-3, 129-4, 129-5, 112-7, 130-3, and 219-1), is fair, reasonable, and adequate. Accordingly, the Court grants plaintiffs' motion for final approval of the settlement.

1

## BACKGROUND

Plaintiffs filed an amended complaint against the Commissioner of Social Security on May 4, 2011, alleging that the Named ALJs are biased against Social Security disability claimants. According to the complaint, the Named ALJs systematically deprive claimants for Social Security disability ("SSD") benefits and Supplemental Security Income ("SSI") benefits based on disability of their right to a full, fair, and non-adversarial hearing before an impartial adjudicator in violation of the Social Security Act, 42 U.S.C. §§ 405(b)(1) and 1383(c)(1), the Administrative Procedure Act, 5 U.S.C. § 556(b), and the due process clause of the Fifth Amendment. The complaint defines the class as comprised of "all claimants whose claims have been or will be assigned to the Named ALJs for a hearing and/or decision and all SSI and SSD claimants who, since January 1, 2005, have received an unfavorable or partially favorable decision, not reversed on any subsequent appeal, from the Named ALJs." (See Am. Compl. ¶ 31.) Plaintiffs' complaint seeks declaratory and injunctive relief, including a permanent injunction prohibiting the Named ALJs from presiding over any claims for SSI or SSD benefits.

A.    Settlement

On January 11, 2013, after lengthy negotiations between the Social Security Administration ("SSA"), the Department of Justice, and class counsel for plaintiffs, Gibson Dunn & Crutcher LLP ("Gibson Dunn") and the Urban Justice Center, the parties reached a proposed settlement agreement. The settlement expressly denies wrongdoing on the part of defendant Commissioner.

Under the terms of the settlement, a class member whose claim for disability benefits was denied or partially denied during the period from January 1, 2008 through the date on which the settlement agreement is approved is entitled to a readjudication of his or her claim before an ALJ other than a Named ALJ, with certain exceptions. (See Settlement Agreement, D.E. # 112-1, at

2

III.A.1-2.)  The class member must affirmatively request readjudication within sixty days after receiving notice of his or her right to the relief.  (See id.; Notice A, D.E. # 112-2.)

The settlement also provides for prospective relief for class members whose claim for disability benefits is denied or partially denied during a thirty-month period starting on the day after the date of final approval of the settlement agreement.  (See Settlement Agreement, D.E. # 112-1, at III.B.1.)  A designated group of staff members with the Appeals Council of the SSA will review the decision denying or partially denying benefits to determine whether the decision is "legally sufficient" or whether it "contains an error of law or abuse of discretion."  (See id. at III.B.3.)  If the staff finds that remand is appropriate, the class member is entitled to a readjudication of his or her claim before an ALJ other than a Named ALJ.  Class members eligible for this further administrative review who do not decline it will be deemed to have requested it.

The settlement further requires the SSA to conduct training programs and provide mentors for ALJs.  The SSA must also issue a Social Security Ruling ("SSR") regarding agency procedures for addressing allegations of ALJ bias or misconduct.  (See id. at IV.)

B.    Notice of Proposed Settlement and Fairness Hearings

Pursuant to the Court's order preliminarily approving the settlement, a notice of the class action settlement and fairness hearing was sent to class members who received an unfavorable or partially favorable decision from one of the Named ALJs between January 1, 2008 and May 3, 2013.  Specifically, the SSA mailed 6,796 copies of Revised Notice E (D.E. # 130-3) to potential class members and their legal representatives.  Of the 6,796 mailings, 422 were returned as undeliverable, excluding duplicates.  The notice was also published on the SSA's website and posted in the Queens Office of Disability Adjudication and Review.  A Spanish-language translation of the notice was published in the newspaper El Diario La Prensa.

3

A fairness hearing was held on July 24, 2013, at which the Court heard comments from nine people and argument from the parties. The parties informed the Court that a group of potential class members had not received notice of the fairness hearing: (1) claimants who received decisions as a result of "continuing disability reviews", i.e. periodic evaluations of the claimant's eligibility to receive benefits, and (2) claimants who had received decisions as a result of a disability redetermination, upon turning 18 years old, for eligibility for SSI benefits. As directed by the Court, the SSA mailed 244 notices to these class members and their legal representatives.[1] (See Amended Revised Notice E, D.E. # 219-1.) Of these 244 mailings, 15 were returned as undeliverable.

Shortly before the second fairness hearing was held on September 16, 2013, the SSA reported that it had recently discovered that for a number of potential class members to whom Notice E mailings had been sent, a more recent address was available in one of the SSA's several databases. (See Letter, D.E. # 219.) The Court held the second fairness hearing as scheduled, during which the Court heard from the parties and ALJ Strauss. At the hearing, the SSA represented that in total, it had more recent addresses for 299 potential class members. (Tr. of 9/16/2013 Fairness Hearing at 5.) The SSA explained that it was in the process of reconciling claimant addresses across databases and that it would make every reasonable effort to ensure that future notices were sent to the most recent address on file for each eligible claimant.

---

[1] These 244 notices also included mailings to potential class members who received an unfavorable or partially favorable decision from one of the Named ALJs between May 3, 2013 and July 24, 2013. (Tr. of 9/16/2013 Fairness Hearing at 4.)

**DISCUSSION**

## I.     Adequacy of Notice

The standard for the adequacy of settlement notice in a class action is that of reasonable-
ness.  See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113-14 (2d Cir. 2005).  "No-
tice need not be perfect, but need be only the best notice practicable under the circumstances, and
each and every class member need not receive actual notice, so long as class counsel acted rea-
sonably in choosing the means likely to inform potential class members."  In re Merrill Lynch
Tyco Research Sec. Litig., 249 F.R.D. 124, 133 (S.D.N.Y. 2008).  Notice is adequate if the aver-
age class member can understand it.  Wal-Mart Stores, 396 F.3d at 114.

The Court finds that notice of the settlement and fairness hearings was adequate.  The
Revised Notice E (D.E. # 130-3) and amended Revised Notice E (D.E. # 219-1) provided a clear
summary of the terms of the proposed settlement and advised potential class members of their
right to object to the settlement and to appear at the fairness hearings.  In mailing over seven
thousand notices to potential class members and their representatives, the SSA made reasonable
efforts to inform as many potential class members as practicable, notwithstanding the fact that
there appears to be some number of class members for whom the SSA has a more recent address
on file in its other databases.

Accordingly, the Court's order preliminarily approving the proposed settlement is hereby
amended nunc pro tunc such that the SSA is deemed to have provided sufficient notice of the
proposed settlement and of the July 24 and September 16, 2013 fairness hearings.  Going for-
ward, the SSA will be deemed to have complied with its notice requirements with respect to us-
ing a class member's "last known address" for sending Notice A (D.E. # 112-2) if the following
conditions are met:

(1) The SSA will use reasonable efforts to reconcile the addresses which are reflected in the SSA's relevant searchable databases for all potential class members to determine the most recent available address for each class member. The resulting address will be considered the "last known address" as used in the settlement.

(2) If Revised Notice E was returned as undeliverable after mailing in accordance with the procedure in paragraph (1), above, and no updated valid address can be located in the SSA's databases at the time of mailing Notice A, the SSA will not send a copy of Notice A to an undeliverable address, but will include the names and addresses of these potential class members in the list provided to class counsel under the terms of Section III(A)(4) of the settlement.

## II.    Approval of Settlement

### A.    General Standards

Federal Rule of Civil Procedure 23(e)(2) provides that the Court may approve a class action settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." See D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) ("The District Court must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness and that it was not a product of collusion." (internal citations omitted)). A settlement reached prior to class certification is subject to a higher degree of scrutiny in evaluating its fairness. Id. at 85. A court determines a settlement's fairness by examining both the negotiating process by which settlement was reached and the substantive terms of the settlement. Weinberger v. Kendrick, 698 F.2d 61, 73-74 (2d Cir. 1982). Where the integrity of the negotiation process is preserved, a strong initial presumption of fairness attaches to the proposed settlement. See In re NASDAQ Mkt.-Makers Antitrust Litig., 187 F.R.D. 465, 474 (S.D.N.Y. 1998). The Second Circuit "will disturb a judicially-approved settlement only when an objector has made a clear showing that the District Court has abused its discretion." D'Amato, 236 F.3d at 85 (internal quotation marks omitted).

6

B.     Procedural Fairness:  the Negotiation Process

The Second Circuit has made clear that with respect to procedural fairness, a court must examine the negotiation process to ensure that the settlement "resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." D'Amato, 236 F.3d at 85 (internal quotation marks omitted).

The parties engaged in substantial documentary discovery prior to the instant settlement. The settlement was reached following nearly a year of negotiations, conducted while a fully-briefed motion to dismiss was pending before the Court.  The negotiations were supervised by Magistrate Judge Mann, who described the process as lengthy and complex.  (See Report & Recommendation, D.E. # 119, at 2.) The Court is familiar with the many status reports filed over the course of the negotiation period (D.E. # 75, 78, 80, 82, 85, 88, 90, 92, 94, 96), which evidence an arms-length exchange during which counsel on either side carefully guarded the interests of their clients.  Class counsel affirms that the negotiations were at times contentious.  (Sicilia Decl. at ¶ 2; Tr. of 7/24/13 Fairness Hearing at 12-13.)  The Court also held an in-person status conference on April 17, 2013, at which the Court questioned the parties regarding various aspects of the settlement.  Based on the foregoing, the Court is satisfied that the settlement is "the product of serious, good faith negotiations that aim to provide effective injunctive . . . relief." D.S. ex rel. S.S. v. New York City Dep't of Educ., 255 F.R.D. 59, 75 (E.D.N.Y. 2008) (quotation marks omitted).

C.     Substantive Fairness:  the Grinnell factors

In determining whether the settlement is substantively fair, the court must consider the following factors:

7

(1) the complexity, expense and likely duration of the litigation,

(2) the reaction of the class to the settlement,

(3) the stage of the proceedings and the amount of discovery completed,

(4) the risks of establishing liability,

(5) the risks of establishing damages,

(6) the risks of maintaining the class action through the trial,

(7) the ability of the defendants to withstand a greater judgment,

(8) the range of reasonableness of the settlement fund in light of the best possible recovery,

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

City of Detroit v. Grinnell, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato, 236 F.3d at 86. "A court need not find that every factor militates in favor of a finding of fairness; rather, a court considers the totality of these factors in light of the particular circumstances." In re Merrill Lynch, 249 F.R.D. at 134 (alteration and internal quotation marks omitted).

### 1.    Complexity, Expense, and Likely Duration of the Litigation

This action raises several novel legal and factual issues, including the extent to which this Court has the ability to grant plaintiffs' requested relief. Consideration of the merits of this action would involve the production and review of voluminous documents, including transcripts of hearings before the five Named ALJs and records pertaining to each of the named plaintiffs. Prior to the start of settlement negotiations, the Commissioner represented to the Court that it had produced more than 8,500 pages in response to plaintiffs' discovery requests thus far. (D.E. #

8

60.) If this suit were to continue, there would likely be additional discovery disputes and motion practice. If the case proceeded to trial, the parties would likely file post-trial motions and an appeal. Indeed, most "class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." In re Austrian and German Bank Holocaust Litig., 80 F. Supp. 2d 164, 174-75 (S.D.N.Y. 2000), aff'd sub nom. D'Amato, 236 F.3d at 86. The Court finds that this factor weighs in favor of the settlement.

### 2.    Reaction of the Class

Since the 7,040 notices of the proposed settlement were sent to potential class members and their legal representatives, over 50 individuals submitted comments to the Court. The Court also received four additional letters forwarded by the Urban Justice Center. (D.E. # 146.) It is apparent from these submissions that the class members feel aggrieved by their adjudications before the Named ALJs. Only six objections to the settlement have been received by the Court, which are addressed more fully below. Of these six objectors, only two are class members. The fact that a small number of objections were received weighs in favor of settlement. See D'Amato, 236 F.3d at 86-87. Further, class counsel has reported receiving over 500 phone calls and 20 written inquiries and attests that the "vast majority of callers and writers were enthusiastic about the settlement and excited about the possibility of receiving rehearings." (Sicilia Decl. at ¶ 4.) The Court is satisfied that the positive reaction of the class, particularly in light of its size, weighs in favor of the settlement.

### 3.    Stage of Proceedings and Amount of Discovery

The Court considers this factor to ensure that there exists "some evidentiary foundation" in support of the proposed settlement. Plummer v. Chem. Bank, 668 F.2d 654, 659 (2d Cir. 1982). "[T]he Court need not find that the parties have engaged in extensive discovery" to ap-

9

prove the settlement. <u>Austrian and German Bank Holocaust Litig.</u>, 80 F. Supp. 2d at 176; <u>see</u> <u>also</u> <u>Schwartz v. Novo Industri A/S</u>, 119 F.R.D. 359, 362 (S.D.N.Y. 1988) ("The absence of formal discovery has not always prevented consideration of settlement."). Rather, "[t]he Court must find that counsel had sufficient information to act intelligently on behalf of the class." <u>Chatelain v. Prudential-Bache Sec., Inc.</u>, 805 F. Supp. 209, 214 (S.D.N.Y. 1992).

As mentioned above, the parties engaged in substantial discovery up to this Court's order of a stay. In a letter filed on January 13, 2012, the Commissioner informed Magistrate Judge Mann that it had produced 8,500 pages of documents and was continuing to produce documents responsive to the agreed-upon categories set forth in the November 4, 2011 Status Report (D.E. # 33) as well as several additional categories requested by plaintiffs in their November 9, 2011 letter (D.E. # 35). Further, much of the support for plaintiffs' claims in this suit comes from district court opinions, which are publicly available documents. <u>See Schwartz</u>, 119 F.R.D. at 362 (concluding that counsel had sufficient information to act intelligently for the class where counsel submitted that much of the case rested on matters of public record, such as public filings and news articles, which counsel thoroughly reviewed). The Court finds that counsel obtained sufficient information to be able to intelligently assess the strengths and weaknesses of the case and appraise settlement proposals.

        4.     Risks of Continuing Litigation

The Court considers together the fourth factor, the risks of establishing liability, the fifth factor, the risks of establishing damages, and the sixth factor, the risks of maintaining the action through trial, as each of these factors concern the risks inherent in proceeding with this action. As plaintiffs seek only declaratory and injunctive relief, the Court will consider the fifth factor as the risk that plaintiffs will be unable to demonstrate their entitlement to the requested relief. <u>See</u>

Marisol A. v. Giuliani, 185 F.R.D. 152, 162, 164 (S.D.N.Y. 1999), aff'd sub nom. Joel A. v. Giuliani, 218 F.3d 132 (2d Cir. 2000). "This factor does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 459 (S.D.N.Y. 2004); see also Weinberger, 698 F.2d at 74 (stating that although trial judge must "apprise himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success . . . . 'all' cannot really mean 'all,'" as it cannot be that "in order to avoid trial, the judge must in effect conduct one" (internal quotation marks omitted)).

As discussed above, plaintiffs face considerable risks in surviving a fully-briefed dispositive motion and in prevailing in pretrial disputes over discovery and evidentiary matters, trial, and appeal. In addition, the Commissioner has raised compelling arguments about whether this Court has the authority to grant the relief requested in plaintiffs' complaint, most significantly, a permanent injunction prohibiting the Named ALJs from presiding over any claims for SSI or SSD benefits. (See Mem. in Support of Motion to Dismiss, D.E. # 40-1, at 45-49; Reply Mem., D.E. # 48, at 28-30.)

Class counsel affirms that it is their informed opinion that the risks associated with continuing the action are "quite substantial and weigh heavily in favor of the Settlement." (Sicilia Decl. at ¶ 6.) Where, as here, settlement has been reached after an arms-length negotiation, "great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (internal quotation marks omitted), aff'd, 117 F.3d 721 (2d Cir. 1997). The Court has carefully reviewed the proposed settlement and finds, for reasons further dis-

cussed below, that the relief afforded by the settlement is sufficiently favorable that the certainty
of relief now is more desirable than the possibility of some greater relief in the future in light of
the risks inherent in continuing the action.

> 5.    Range of Reasonableness of Settlement in Light of Best Possible Recovery and Risks of Litigation

The seventh factor is inapplicable to this case, as plaintiffs seek only declaratory and in-
junctive relief.  Although there is no "settlement fund" here, the Court will consider the eighth
and ninth factors together as part of a larger determination of whether the settlement is reasona-
ble.  "In deciding whether to approve a proposed class settlement, the most significant factor for
the district court is the strength of the claimants' case balanced against the settlement offer."
Plummer, 668 F.2d at 660.

The settlement offers the class members the most important, most tangible form of relief
sought by plaintiffs:  readjudications before ALJs other than the five alleged to be biased.  It also
offers a form of prospective relief by which any disability claimant who is issued an unfavorable
or partially favorable decision by one of the Named ALJs in the 30-month period following final
approval of the settlement will receive appellate review by specified staff in the appellate office
of the SSA's Office of Disability Adjudication and Review.  These provisions for new hearings
and a period of monitoring in the form of review by dedicated staff set aside to review the
Named ALJs' decisions constitute a significant portion of the relief originally requested by plain-
tiffs in their complaint.  Class counsel affirms that it believes that "[g]iven the uncertainty and
substantial expense of litigating the claims through trial and any appeals . . . the settlement [is]
fair, reasonable, and adequate for the class as a whole."  (Sicilia Decl. ¶ 7.)  Class counsel also
stated at the fairness hearing on July 24, 2013 that the settlement afforded robust relief and that
the only requested relief that plaintiffs did not achieve through the settlement was that the

12

Named ALJs no longer be allowed to hear social security disability cases. (Tr. of 7/24/13 Fairness Hearing at 11-14.) The Court gives class counsels' recommendation considerable weight, keeping in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." Newberg on Class Actions § 11:47 (4th ed.). Having considered the settlement in light of the relief requested by plaintiffs and risks of continued litigation, the Court concludes that the certainty, immediacy, and tangibility of the relief afforded by the settlement weigh in favor of approval.

   D.    Attorney's Fees

   Pursuant to the settlement agreement, the Urban Justice Center will receive $125,000 in attorney's fees. This figure is based on time spent until settlement negotiations began and was calculated in accordance with the statutory rate available under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(A). (Sicilia Decl. ¶ 8.) Class counsel affirms that that the amount of attorney's fees "represents the waiver of hundreds of thousands of dollars." (Id.; Tr. of 7/24/13 Fairness Hearing at 55.) Gibson Dunn has litigated this case on a pro bono basis and has agreed to waive the substantial fees to which it may otherwise be entitled. The Court finds that fees due to the Urban Justice Center are modest and more than reasonable in light of the time and labor expended by counsel, the complexity of this litigation, the quality of representation, and public policy considerations. See Wal-Mart Stores, 396 F.3d at 121 (setting forth factors to confirm the reasonableness of a fee award).

   E.    Objections

   Of the objections received by the Court, only two were from class members. As a general rule, only class members have standing to object to a proposed settlement. See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229,

244 (2d Cir. 2007); In re Drexel Burnham Lambert Grp., Inc., 130 B.R. 910, 923 (S.D.N.Y. 1991). As the Fourth Circuit observed in Gould v. Alleco, 883 F.2d 281, 284 (4th Cir. 1989), a rule that "routinely allow[ed] non-class members to inject their concerns via objection at the settlement stage" would result in "eleventh hour expansion of class actions." The Fourth Circuit concluded that any "[i]nterjection of the opposing views of non-class members should proceed via intervention under Rule 24." Gould, 883 F.2d at 284.

However, the Court addresses the comments it received from both class members and non-parties below.

### 1. Class Member Objectors

The Court received comments from two class members indicating that they objected to the settlement.[2] (Email from Hassan Afzal, D.E. # 150; Email from Gajinder P. Singh, D.E. # 176.) Neither comment set forth any grounds for objecting to the settlement. Mr. Afzal and Mr. Singh were both allotted time to speak at the first fairness hearing on July 24, 2013 and were notified of the opportunity. (DE 186, Scheduling Order.) Neither attended the hearing, nor did they submit any subsequent comments to the Court indicating the basis of their objections. In sum, the Court has not heard anything from class members that alters its view on the fairness of the settlement.

### 2. Other Comments

#### a) Jacques M. Farhi (D.E. # 140)

Jacques M. Farhi is an attorney with experience representing plaintiffs in other class action suits against the SSA. Mr. Farhi stated that he fully supports the settlement but believes that the settlement should provide for a presumptive date last insured. (See D.E. # 140 at 2; Tr. of

---

[2] The Court also received an email from Elijah Ellis indicating that he wished to "opt out" of the class on behalf of his two children. (D.E. # 206.) Mr. Ellis later withdrew this request, stating that it was an error. (D.E. # 215.)

14

7/24/13 Fairness Hearing at 16-18.) The presumption would relieve certain claimants from having to show "disability insured status," a condition to receiving social security disability benefits under 42 U.S.C. § 423(a). Mr. Farhi cites to other class action settlements that provided for such a presumption.

Plaintiffs respond that "[p]resumptions have been used in past Social Security class action settlements to address specific issues uncovered in the course of litigation" where specific technical issues would have precluded relief for many class responders.   They argue that here, "the Padro litigation uncovered no such technical issues that would effectively preclude relief, so no presumptions were crafted." (See Mem. In Support of Final Approval, D.E. # 190, at 12-13.) At the July 24 fairness hearing, counsel for the SSA explained that such a presumption was unnecessary because this action involved a limited period of time, unlike the cases Mr. Farhi cited in his submission to the Court. Plaintiffs' counsel agreed that the presumption was unnecessary, explaining that, in contrast to one of the cases cites by Mr. Farhi, this case did not implicate technical rules that affected whether one's claim was reopened and the relevant period that would be considered by the SSA. (Tr. of 7/24/13 Fairness Hearing at 52-54.) After hearing from the parties, the Court is satisfied that the absence of the sort of presumption advocated by Mr. Farhi does not render the settlement unfair, unreasonable, or inadequate.

b)      Larry J. Butler (D.E. # 152)

Larry J. Butler is an ALJ serving in Florida.  He submitted a nine-page letter objecting to approval of the settlement and to class certification.  He alleges the existence of an improper financial relationship between the Department of Justice (which represents defendant in this action) and the Urban Justice Center, citing annual reports which list Urban Justice Center grant funding from various sources including the Department of Justice.  Mr. Butler also contends that

15

the named plaintiffs have not exhausted their administrative remedies, an argument that the Commissioner made in his motion to dismiss. Lastly, he argues that class certification is improper because each case is factually distinct, and thus the claims do not turn on questions of law applicable in the same manner to all class members.

Plaintiffs respond that the Urban Justice Center funds received from the Department of Justice are government grants for victim services under the Violence Against Women Act and for discharge planning services for individuals with mental illness from the Department of Housing and Urban Development. (Mem. In Support of Final Approval, D.E. # 190, at 10 n.2.) Plaintiffs also argue that Mr. Butler's conflict of interest argument lacks merit because this settlement does not result in a common fund, where the award of attorney's fees might reduce the recovery available to class members.

The Court does not agree with plaintiffs that the lack of a common fund necessarily vitiates conflict of interest concerns. A financial relationship or collusive arrangement could induce class counsel to accept a settlement proposal that does not provide adequate relief for the class, regardless of whether the settlement provides for injunctive relief or money damages. The reason Mr. Butler's objection is meritless is that there is no evidence of an improper financial relationship here. The fact that the executive entity that provides counsel to the defendant may also provide funds to the Urban Justice Center in an entirely unrelated context does not establish such an improper financial relationship. Further, the Court has observed the proceedings in this action for over two years; litigation has been consistently adversarial and vigorous. Mr. Butler's contention regarding class certification also has no merit. Although each case is factually distinct, the claim that is common throughout the class is that the Named ALJs were systemically biased

16

against SSD and SSI claimants. Finally, Mr. Butler's exhaustion argument and remaining contentions have no bearing on the fairness, reasonableness, or adequacy of the settlement.

        c)      Linda A. Stagno (D.E. # 148, 212) & Hazel C. Strauss (D.E. # 199)

As Ms. Stagno's and Ms. Strauss's objections are similar, the Court will address them together. Linda A. Stagno is the Vice President of the Association of Administrative Law Judges. She contends that the proposed settlement is unfair to the Named ALJs, who were "painted with the broad brush of bias and wrongdoing." (D.E. # 212.) In addition to contesting the merits of plaintiffs' claims, Ms. Stagno argues that the SSA failed to protect the interests of the ALJs in that it did not permit the Named ALJs to contest the allegations and did not keep them apprised of the case. At the July 24, 2013 fairness hearing, Ms. Stagno took issue with the fact that the Named ALJs' cases were not examined in light of claimants' credibility, opinions of expert witnesses, and other evidence in order to determine whether their denials were incorrect or in fact a result of bias. (Tr. of 7/24/13 Fairness Hearing at 22-23.) She argued that the appropriate process was for the agency to allow the Named ALJs to challenge the allegations. (Id. at 24.) Barring that, Ms. Stagno requested that the language in the settlement in which the Commissioner denies any wrongdoing be strengthened to state that no finding of bias or incompetence on the part of any of the five Named ALJs is admitted or acknowledged. (Id. at 25.)

Hazel C. Strauss is one of the ALJs named in this lawsuit. She submitted a letter to the Court which asserted that the Named ALJs were denied information about and access to the case. She stated that the Named ALJs requested that the union intervene on their behalf but that the union was denied access to the lawsuit and that she could "not afford the $3 million plus that plaintiff's attorney stated was the value of time expended in legal services." (D.E. # 199.) At the September 16, 2013 hearing, ALJ Strauss requested stronger language in the settlement deny-

17

ing wrongdoing by the five Named ALJs.  ALJ Strauss also asked the Court to issue an order precluding those affected by the settlement from mischaracterizing the settlement agreement on web sites or to the press and media.  (See Tr. of 9/16/2013 Fairness Hearing at 21-22.)

The Named ALJs have not shown good cause for failing to intervene earlier in this action.  Although ALJ Strauss indicated in her letter that the union sought to intervene on their behalf but was denied access, the Court sees no reason why the union or other counsel retained by the ALJs could not have timely filed a motion to intervene pursuant to Federal Rule of Civil Procedure 24.  The Court is also not persuaded by ALJ Strauss's claim that the Named ALJs could not have intervened because they could not afford private counsel, as they are experienced attorneys and could have proceeded pro se.

As to Ms. Stagno's concern that the merits of the allegations against the Named ALJs have not been adequately challenged, this examination is one ordinarily left for trial.  The purpose of settlement is to forego an ultimate determination on the merits.  To the extent that the Named ALJs wished to pursue such a determination, the proper course would have been to make a timely motion for intervention.

Lastly, the settlement agreement expressly denies wrongdoing on the part of defendant Commissioner.  (See Settlement Agreement at Recitals, Section XI, D.E. # 112-1.)  This provision adequately addresses the concern, expressed by both Ms. Stagno and ALJ Strauss, as to the reputational damage to the Named ALJs.  Although Ms. Stagno and ALJ Strauss request that such language be strengthened by adding specific denials relating to the five Named ALJs, the Court does not find such language necessary to ensure the fairness of the settlement.  In sum, the non-class members have failed to point out any unfairness that would preclude final approval of the settlement.

18

## CONCLUSION

For the reasons stated above, the Court finds the class action settlement fair, reasonable, and adequate.  Plaintiffs' motion for final approval of the class action settlement and entry of final judgment is GRANTED.  The Clerk of Court is directed to terminate all pending motions, enter judgment and close this case.

SO ORDERED.

Dated:  October 17, 2013
      Brooklyn, N.Y.

                                               s/Carol Bagley Amon

                                             Carol Bagley Amon
                                             Chief United States District Judge